COMMONWEALTH *vs.* JOHN WILL BURSTON.

No. 91-P-1110.

Hampden. June 11, 1993. - September 23, 1993.

Present: ARMSTRONG. KASS. & LAURENCE. JJ

*Evidence*, Relevancy and materiality, Consciousness of guilt, Flight. *Practice, Criminal*, Instructions to jury, Indictment. *Habitual Offender.*

At the trial of an unarmed robbery indictment the judge acted within his discretion in receiving evidence of the defendant's flight from an earlier trial on the same charge to suggest consciousness of guilt; nor was the judge's unobjected-to instruction to the jury with regard to consciousness of guilt misleading. [356-357]

A criminal indictment prepared so that the caption date was that of the beginning of the term of the court during which the grand jury made their presentment, rather than that of the days when evidence was placed before the grand jury, complied with the Massachusetts practice regarding the form of indictments. [357]

A Superior Court judge correctly found, in a jury-waived proceeding, that a criminal defendant convicted of his fourth felony was an habitual offender under G. L. c. 279, § 25; moreover, there was no merit to the defendant's contentions that use of the habitual offender statute offended the prohibition against double jeopardy, and that the convictions brought forward by the Commonwealth as the prior offenses, the first of which was in 1973, were stale and their use as evidence to invoke § 25 should have been barred. [358-359]

INDICTMENTS found and returned in the Superior Court Department on July 25, 1989.

A charge of unarmed robbery was tried before *Lawrence B. Urbano*, J., and a charge of being an habitual offender was thereafter heard by him without jury.

*Esther J. Horwich* for the defendant.

*Elizabeth Dunphy Farris*, Assistant District Attorney, for the Commonwealth.

KASS, J. After a jury returned a verdict of guilty of unarmed robbery against the defendant, John Will Burston, a

Superior Court judge, in a jury-waived proceeding, found the defendant to be an habitual offender under G. L. c. 279, § 25.[1] As prescribed by that statute, the judge imposed the maximum penalty for unarmed robbery: imprisonment in State prison for life. G. L. c. 265, § 19. Of the various points Burston raises on appeal, there is novelty only in his questioning whether, on the facts, it was proper to employ the habitual offender statute, and whether use of that statute offends the prohibition against double jeopardy. The other issues Burston puts forth are susceptible of relatively brief disposition. We affirm.

Two men had mugged Wayne Bukowski, relieving him of approximately $80. The evidence implicating Burston in the robbery included an identification by Bukowski and testimony that during a search incident to the arrest of Burston and his accomplice, the police had discovered Burston in possession of $40 and his accomplice in possession of $43.

1. *Propriety of receiving evidence of consciousness of guilt.* Burston had been brought to the bar for trial once before for the robbery of Bukowski, but that proceeding ended in a mistrial when Burston failed to return to court after the jury had been impaneled. Indeed, Burston vanished. Sometime later the police apprehended him in another county and arrested him on a bench warrant. During the ensuing trial, the Commonwealth placed in evidence the defendant's disappearing act in the aborted trial as a token of his consciousness of guilt.

Although a colloquy took place at which defense counsel urged exclusion of the defendant's flight during the earlier trial, no objection was lodged when the consciousness of guilt evidence was actually offered. It is doubtful that the question of admissibility was preserved, and the protest the defendant now makes, that the evidence was more inflammatory than it

[1]General Laws c. 279, § 25, provides: "Whoever has been twice convicted of crime and sentenced and committed to prison . . . for terms of not less than three years each . . . shall, upon conviction of a felony, be considered an habitual criminal and be punished by imprisonment in the state prison for the maximum term provided by law as a penalty for the felony for which he is then to be sentenced."

was probative, is insubstantial. Evidence of a defendant's flight may be received to suggest consciousness of guilt, *Commonwealth* v. *Booker*, 386 Mass. 466, 469 (1982), whether the flight be from the scene of the crime or from the trial. *Commonwealth* v. *Patch*, 11 Mass. App. Ct. 981 (1981). When, as here, the defendant has wilfully made himself unavailable for trial, it hardly matters that a substantial interval may have elapsed between the time of the crime and the time of the disappearing act. See *Commonwealth* v. *Kane*, 19 Mass. App. Ct. 129, 138 & n. 7 (1984). The judge was well within his discretion in receiving evidence of Burston's flight from his trial.

Nor was the judge's instruction to the jury (unobjected to by trial counsel) misleading. The judge called to the jury's attention that evidence of consciousness of guilt alone was not evidence of guilt; that persons may take flight for reasons unrelated to a sense of guilt; or that they may feel guilty for reasons unrelated to legal guilt. See *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982); *Commonwealth* v. *Matos*, 394 Mass. 563, 565-566 (1985).

2. *Defects in the indictment.* There is a surface inconsistency, but no more, between the date of the indictment and when the facts were presented to the grand jury. The defendant takes the date of the indictment to be the second Monday of July, 1989, which was July 10, 1989, and so, indeed, the caption of the indictment seems to say. Evidence in support of an indictment of Burston was not placed before the grand jury until eight to ten days later, and the indictment appears to have been handed up July 25, 1989.

That sequence of dates is not, however, a sign of irregularity. Preparing the indictment so that the caption date is that of the beginning of the term of the court during which the grand jury made their presentment, rather than that of the days when evidence was placed before the grand jury, is a practice of long standing in Massachusetts regarding the form of indictments. *Commonwealth* v. *Colton*, 11 Gray 1, 3 (1858). *Commonwealth* v. *Hamilton*, 15 Gray 480, 482 (1860).

3. *Alleged flaws in application of the habitual offender statute.* Under the umbrella of claims of ineffective assistance of counsel, the defendant's appellate counsel mounts an attack on the application of the habitual offender statute.[2]

First, the defense — on appeal — observes that the statute, G. L. c. 279, § 25, which is set forth in note 1, *supra*, provides that "[w]hoever has been *twice* convicted of a crime" (emphasis supplied) will suffer the enhanced penalty. Accordingly, the defense reasons, the statute applied to conviction of a *third* felony only and may not be used against Burston, who already has a history of having been thrice convicted. The unarmed robbery charge was his fourth conviction of a felony.[3] Criminal statutes, defense counsel admonishes us, are to be construed strictly.

To be sure, but even a rigid and literal reading does not require the absurd result for which the defendant contends: that two prior felony convictions bring on a defendant's head a more severe sanction than three or more prior felony convictions. Twice, in context, is a minimum requirement, as is consistent with the policy underlying the statute: to combat recidivism. *Commonwealth* v. *Richardson*, 175 Mass. 202, 204 (1900).

Second, the defense offers the proposition that the use of prior convictions to enhance penalties is offensive to the constitutional and statutory prohibitions against double jeopardy. See the Fifth Amendment to the Constitution of the United States and G. L. c. 263, § 7. That, however, confuses trial with punishment. Although it is obnoxious to the Constitution and the statute to subject a person to successive trials for the same offense,[4] it is rational and inoffensive to provide for cumulative penalties based on conviction of sepa-

---

[2]The defendant also charges his trial counsel with ineffectiveness for failing to move to dismiss the indictment because the indictment antedated the presentation of evidence. As we have seen in part 2 of this opinion, there is nothing to that argument.

[3]The previous convictions were for 1) armed robbery, 2) unarmed robbery, and 3) assault and battery by means of a dangerous weapon.

[4]See *Costarelli* v. *Commonwealth*, 374 Mass. 677, 681 (1978); *Commonwealth* v. *Norman*, 27 Mass. App. Ct. 82, 85 (1989).

rate offenses. *Plumbly* v. *Commonwealth*, 2 Met. 413, 414-418 (1841). *McDonald* v. *Commonwealth*, 173 Mass. 322, 326-327 (1899). See *Gryger* v. *Burke*, 334 U.S. 728, 732 (1948).

The final assault the defendant makes on the application of G. L. c. 279, § 25, is that the convictions which the government brought forward as the prior offenses, the first of which reaches back to 1973, are stale and their use as evidence to invoke § 25 should have been barred. We may begin by observing that § 25 contains no limitation on the age of the prerequisite convictions. Compare, in this respect, G. L. c. 90, § 24, which considers only offenses occurring within six years preceding the date of the offense for which the defendant is on trial as a repeat offender.

In any event, it is close to certain that the prerequisite offenses under § 25 will have occurred some considerable time before the most recent one for which the defendant is on trial. The prerequisite offenses, under the statute, are of a sort for which a sentence of at least three years has been imposed and for which the defendant has been committed to prison. To the extent there are long intervals between the defendant's offenses it is because his criminal career has been interrupted by periods of incarceration. See *Commonwealth* v. *Hall*, 397 Mass. 466, 468-469 (1986), in which the court relied in part upon a twelve year old conviction to make a finding and impose sentence under G. L. c. 279, § 25.

*Judgment affirmed.*