ANNE W. LUK vs. COMMONWEALTH.

Suffolk. September 11, 1995. - November 27, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

Constitutional Law, Double jeopardy. Motor Vehicle, License to operate, Operating under the influence. License. Evidence, Breathalyzer test.

Statement of the abuses against which the double jeopardy clause of the Fifth Amendment to the United States Constitution protects [419], and discussion of cases considering specifically the protection against multiple punishments [420-423].

Discussion of the privilege to operate a motor vehicle and its regulation, including suspension and revocation, by the State in the interest of public safety. [423-424]

General Laws c. 90, § 24 (1) (f) (1), mandating administrative suspension of the license to operate of a driver who refuses to take a breathalyzer test, is remedial, that is, its purpose is the protection of public safety rather than punishment; consequently a criminal prosecution under G. L. c. 90, § 24 (1) (a) (1), for operating a motor vehicle while under the influence of intoxicating liquor, brought after such an administrative suspension, does not violate the double jeopardy clause of the United States Constitution or Massachusetts common or statutory law. [424-430]

Principles of double jeopardy are not violated when a person's license is administratively suspended pursuant to G. L. c. 90, § 24 (1) (f) (1), for refusal to take a breathalyzer test and that person is later criminally prosecuted for the offense of operating a motor vehicle while under the influence of alcohol where the sanctioned offenses are distinct and not the same. [430-432]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on March 1, 1995.

The case was heard by O'Connor, J.

George F. Gormley (John D. Colucci with him) for the plaintiff.

*David E. Edmonds,* Assistant District Attorney, for the Commonwealth.

*Scott Harshbarger,* Attorney General, & *Gail M. McKenna,* Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

ABRAMS, J. Anne W. Luk's driver's license was suspended for 180 days because she refused to take a breathalyzer test.[1] The Commonwealth also charged her with operating a motor vehicle while under the influence of intoxicating liquor (OUI). See G. L. c. 90, § 24 (1) (*a*) (1) (1994 ed.). Luk moved to dismiss the OUI complaint asserting that to prosecute her on that complaint would violate the prohibition against double jeopardy contained in the Fifth Amendment to the United States Constitution,[2] as well as the common and statutory law of the Commonwealth.[3] The trial judge denied Luk's motion to dismiss. The judge ruled that Luk's refusal to take a breathalyzer test was a matter that would not be relitigated at the criminal trial and therefore double jeopardy principles did not apply.

Pursuant to G. L. c. 211, § 3 (1994 ed.), Luk correctly sought relief from a single justice of this court. See, e.g.,

---

[1]Luk's license was suspended for a period of 180 (not 120 days) because she had a prior conviction under G. L. c. 90, § 24 (1994 ed.). See G. L. c. 90, § 24 (1) (*f*) (1).

[2]The double jeopardy clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." It is applicable to the States through the Fourteenth Amendment to the United States Constitution. *Benton* v. *Maryland,* 395 U.S. 784, 794 (1969).

[3]Although not expressly included in the Massachusetts Declaration of Rights, the prohibition against double jeopardy has long been recognized as part of our common and statutory law. *Thames* v. *Commonwealth,* 365 Mass. 477, 479 (1974). G. L. c. 263, § 7 (1994 ed.). Although "[c]ommon law principles may provide greater protections than either the State or Federal Constitution requires," *Berry* v. *Commonwealth,* 393 Mass. 793, 798 (1985), Luk correctly makes no separate argument that, in these circumstances, the common law gives her greater protection than Federal principles of double jeopardy. See *Adams* v. *Commonwealth,* 415 Mass. 360, 363 (1993) (result is same under Fifth Amendment and laws of Commonwealth); *Commonwealth* v. *Cassidy,* 410 Mass. 174, 176 (1991).

*Kater* v. *Commonwealth, ante* 17, 19 (1995); *Cramer* v. *Commonwealth,* 419 Mass. 106, 107 n.1 (1994); *Koonce* v. *Commonwealth,* 412 Mass. 71, 72 (1992). See also S.J.C. Rule 2:21, *post* 1303 (1995) (effective Nov. 15, 1995). The single justice denied relief. Luk appeals. We affirm the judgment of the single justice.

I. *Facts.* At approximately 2:20 A.M. on December 10, 1994, Wayland police Sergeant Daniel Sauro witnessed a red two-door Honda automobile drive off the road, ride over grass, and strike a stone wall. Luk was the sole occupant of the vehicle. Sauro approached the vehicle and determined that Luk appeared intoxicated.[4] He asked Luk to take a breathalyzer test. Luk refused. The officer confiscated her license in accordance with § 24 (1) (*f*) (1).[5] Luk was issued

___

[4]The officer detected a heavy odor of alcohol. Luk's speech was slurred, and her eyes were watery and bloodshot. She did not turn off the vehicle's engine nor did she immediately respond when the officer asked her if she was all right. She could not walk without assistance. Based on these facts, Officer Sauro concluded that Luk had been operating a motor vehicle while intoxicated.

[5]General Laws c. 90, § 24 (1) (*f*) (1), provides, in pertinent part: "Whoever operates a motor vehicle upon any way or in any place to which the public has right to access, or upon any way or in any place to which the public has access as invitees or licensees, shall be deemed to have consented to submit to a chemical test or analysis of his breath or blood in the event that he is arrested for operating a motor vehicle while under the influence of intoxicating liquor . . . . Such test shall be administered at the direction of a police officer . . . having reasonable grounds to believe that the person arrested has been operating a motor vehicle upon such way or place while under the influence of intoxicating liquor. If the person arrested refuses to submit to such test or analysis, after having been informed that his license or permit to operate motor vehicles or right to operate motor vehicles in the commonwealth shall be suspended for at least a period of one hundred and twenty days, but not more than one year for such refusal, no such test or analysis shall be made and he shall have his license or right to operate suspended in accordance with this paragraph for a period of one hundred and twenty days; provided, however, that any person who . . . has been previously convicted of a violation under this section or a like violation by a court of any other jurisdiction within ten years of the date of the charge in question shall have his license or right to operate suspended forthwith for a period of one hundred and eighty days for such refusal . . . . If a person refuses to take a test under this section, the police officer shall do the following: (i) immediately and on behalf of the registrar take custody of such person's driver license or permit issued by

a fifteen-day temporary driver's license and informed of her right to a hearing before the Registrar of Motor Vehicles (registrar).

On January 7, 1995, the registrar held a hearing regarding the suspension of Luk's license. The hearing officer upheld the suspension. Luk sought review in the District Court pursuant to G. L. c. 90, § 24 (1) (*g*). The District Court, after hearing, affirmed the decision of the registrar. Luk filed a claim of appeal.

On December 12, 1994, Luk was charged in the Framingham Division of the District Court Department with operating a motor vehicle while under the influence of intoxicating liquor. Luk filed a motion to dismiss asserting that a criminal prosecution would be in violation of double jeopardy principles. After her motion was denied by the trial judge and the single justice, Luk admitted to sufficient facts to warrant a finding of guilty.[6] The matter was continued without a finding until April 17, 1996. The judge required Luk to complete a driver alcohol education program pursuant to G. L. c. 90, § 24D (1994 ed.), and suspended her driver's license for forty-five days. See note 7, *infra*.

On April 28, 1995, Luk received notice from the registrar of an additional two-year license suspension because she had previously been convicted under G. L. c. 90, § 24. On June 7, 1995, the Board of Appeal on Motor Vehicle Liabil-

---

the commonwealth; (ii) provide each such person who refuses such test, on behalf of the registrar, with a written notice of intent to suspend, on forms prepared and provided by the registrar; (iii) issue to each such person who refuses such test, on behalf of the registrar, a temporary driving permit . . . ."

[6]Admission to sufficient facts to warrant a finding of guilty is treated as a plea of guilty. *Commonwealth* v. *Duquette*, 386 Mass. 834, 841 (1982). See *Commonwealth* v. *Greene*, 400 Mass. 144, 145-146 (1987) (judge is entitled to treat admission to sufficient facts as the functional equivalent of guilty plea if the admission was made knowingly and voluntarily). See also G. L. c. 90, § 24 (1) (*d*) (1994 ed.).

ity Policies and Bonds affirmed the registrar's decision to suspend Luk's license for the additional two-year period.[7]

II. *Double jeopardy.* The double jeopardy clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *North Carolina* v. *Pearce*, 395 U.S. 711, 717 (1969).[8] It is the third protection that is at issue here. In order to show multiple punishments for double jeopardy purposes, a defendant must show the following three things: first, the administrative license suspension (ALS) imposed on her pursuant to c. 90, § 24 (1) (*f*) (1), is "punishment"; second, the postrefusal license suspension results from the "same offense" for which she is subsequently being criminally punished; and third, the administrative license suspension and criminal case are "separate proceedings." *Department of Revenue of Mont.* v. *Kurth Ranch*, 114 S. Ct. 1937, 1945 (1994).

---

[7]Although the judge did not so state, he sentenced Luk as if she were a first offender. This does not bind the registrar in fulfilling his duties under c. 90, § 24. *Daley* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 406 Mass. 857, 860 (1990). The registrar is required to follow the mandate of G. L. c. 90, § 24 (1) (*c*) (2) (1994 ed.), which provides: "Where the license or the right to operate of a person has been revoked under paragraph (b) and such person has been previously convicted of or assigned to an alcohol or controlled substance education, treatment or rehabilitation program by a court of the commonwealth or any other jurisdiction because of a like violation within a period of ten years preceding the date of the commission of the offense for which such person has been convicted, the registrar shall not restore the license or reinstate the right to operate of such person unless the prosecution of such person has been terminated in favor of the defendant, until two years after the date of the conviction . . . ." Accord *Baldwin* v. *Department of Motor Vehicles*, 35 Cal. App. 4th 1630, 1635-1636 (1995).

[8]Justice Scalia in his dissent in *Department of Revenue of Mont.* v. *Kurth Ranch*, 114 S. Ct. 1937, 1955 (1994) (Scalia, J., dissenting), states that the double jeopardy clause merely prohibits multiple prosecutions and not multiple punishments. He asserts that " '[t]o be put in jeopardy' does not remotely mean 'to be punished,' so by its terms this provision prohibits, not multiple punishments, but only multiple prosecutions."

A. *Case law.* Historically, previous criminal prosecution has not been considered a bar to subsequent civil action unless the objective of the civil action was punishment.[9] See *Helvering* v. *Mitchell*, 303 U.S. 391, 398-399 (1938). It was constitutionally permissible for a State to impose both criminal and civil sanctions for the same act or omission; the double jeopardy clause required only that the State not punish nor attempt to punish twice for the same offense. *Mitchell, supra* at 399. Because it is not disputed that the criminal prosecution in this case resulted in punishment, the question is whether the ALS pursuant to c. 90, § 24 (1) (*f*) (1), barred that punishment as an impermissible second punishment for the offense of OUI.

In *Mitchell, supra*, the Supreme Court first announced the "statutory construction" test for determining whether a civil sanction is "punishment." This test required that the Court ask two questions. "First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. . . . Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention." *United States* v. *Ward*, 448 U.S. 242, 248-249 (1980). With regard to the second inquiry, the Court has stated that "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground." *Flemming* v. *Nestor*,

---

[9]The order of proceedings is constitutionally insignificant. *Kurth Ranch, supra* at 1958 (Scalia, J., dissenting). As Justice Scalia noted in his dissent, "If there is a constitutional prohibition on multiple punishments, the order of punishment cannot possibly make any difference." *Id.* See *United States* v. *Morgan*, 51 F.3d 1105, 1114 (2d Cir.), cert. denied, 116 S. Ct. 171 (1995) ("[W]e are firmly persuaded that the shield of double jeopardy remains in place regardless of the happenstance of whether the civil proceeding or criminal prosecution arising from the same offense comes first. We now rule that such a fortuitous circumstance is of no moment in double jeopardy analysis"); *United States* v. *Bizzell*, 921 F.2d 263, 267 (10th Cir. 1990) ("The civil penalties were exacted before the indictment was returned, but the distinction is not significant. The question is still whether the civil remedies can be fairly described as remedial").

363 U.S. 603, 617 (1960). The statutory construction test was thus very deferential to the Legislature.

The appropriate analysis was redefined in *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963).[10] *Kennedy* listed seven factors to consider in determining if a statute imposes punishment. The factors were (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may be rationally connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. The *Kennedy* factors are useful, although neither exhaustive nor dispositive in double jeopardy analysis.[11]

---

[10]*Kennedy* v. *Mendoza-Martinez*, 373 U.S. 144 (1963), involved the question whether deportation was punishment necessitating the constitutional protections of a criminal prosecution. *United States* v. *Ward*, 448 U.S. 242, 249 (1980), applied the *Kennedy* test to determine whether a civil sanction constituted punishment for double jeopardy purposes.

[11]Were we to apply the *Kennedy* factors to suspension of a driver's license for failure to submit to a breath or blood test, we would reach the conclusion that administrative license suspension is nonpunitive. Although suspension of a driver's license is an affirmative disability or restraint, it has historically been regarded as remedial. See *Helvering* v. *Mitchell*, 303 U.S. 391, 399 (1938). While operating while under the influence is a crime, the behavior of refusing to submit to a breath test is not. Indeed, one's refusal to submit to a chemical test of her breath is not admissible as evidence in the criminal prosecution. *Commonwealth* v. *McGrail*, 419 Mass. 774, 780 (1995) (evidence of refusal to take blood alcohol test is inadmissible at trial). *Commonwealth* v. *Zevitas*, 418 Mass. 677, 683 (1994) (requiring jury instruction on defendant's refusal to submit to blood alcohol test unconstitutional). See *Opinion of the Justices*, 412 Mass. 1201 (1992). The only sanction for refusal to submit to a breath test is suspension of one's driver's license. License suspension does promote deterrence, a traditional aim of punishment, but the main purpose is promoting public safety. This purpose completely explains the sanction. The sanction of license suspension is not excessive in light of this purpose. Accord *State* v. *Strong*, 158 Vt. 56, 60-61 (1992) (applying *Kennedy* factors).

In *United States* v. *Halper*, 490 U.S. 435, 448 (1989), the United States Supreme Court determined that the double jeopardy clause requires a "particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." The Supreme Court held that the statutory construction test is "not well suited to the context of the 'humane interests' safeguarded by the Double Jeopardy Clause's proscription of multiple punishments." *Id.* at 447. Under *Halper*, the labels "civil" and "criminal" are not dispositive. *Id.* Civil sanctions are punishment only if they cannot be explained without reference to a retributive or deterrent purpose. Double jeopardy is not implicated if the sanctions can be entirely explained by a nonpunitive purpose.[12] *Halper* announced "a rule for the rare case." *Id.* at 449. It cautioned that double jeopardy should only be found in those cases where the civil sanction imposed for the same actions on which a criminal penalty has previously been imposed is overwhelmingly disproportionate to remedial aims. *Id.*

Post-*Halper*, the Supreme Court decided *Department of Revenue of Mont.* v. *Kurth Ranch, supra. Kurth Ranch* involved the constitutionality of a drug tax imposed after the conclusion of a prosecution against the criminal defendants based on possession of the same drugs. Although the Supreme Court relied on some of the factors from *Kennedy* and *Halper*[13] in invalidating the drug tax, it expressly limited *Kurth Ranch* to tax cases. *Kurth Ranch, supra* at 1948. See *State* v. *Toriello*, 71 Ohio Misc. 2d 81, 84 (1995) ("The court finds that the facts and circumstances of *Kurth Ranch*

---

[12]See also *United States* v. *Hudson*, 14 F.3d 536, 540 (10th Cir. 1994) ("We therefore must conclude that if a sanction is not exclusively remedial, but rather can only be explained as also affecting deterrence or retribution, it is punishment for double jeopardy analysis. We are careful to note that a determination that a sanction is at least in part punishment requires that it *must* be explained as also serving as a deterrent or retribution, not merely that it *may* be so explained" [emphasis in original]).

[13]The Court relied on four factors in concluding that Montana's drug tax was punishment — the high rate of taxation, the deterrent purpose, that it was conditioned on commission of a crime, and that it taxed possession of goods that no longer existed. *Kurth Ranch, supra* at 1946-1947.

are distinguishable from an ALS followed by a criminal prosecution for [an OUI] offense").

With this backdrop, we proceed to analyze the Massachusetts administrative license suspension statute under the above principles of double jeopardy.

B. *The Massachusetts administrative license suspension statute: G. L. c. 90, § 24 (1) (f) (1).* In Massachusetts, one's right to operate a motor vehicle is a privilege voluntarily granted. See *Roberto* v. *Department of Pub. Utils.*, 262 Mass. 583, 588 (1928) ("The certificate [to operate motor vehicle on specified route] was a privilege. It was neither a contract nor property, and its revocation deprived the petitioner of no vested rights"). Continued possession of this privilege is conditioned on obedience to the Legislature's comprehensive regulatory scheme aimed at regulating the motorways and keeping them safe. *Helvering* v. *Mitchell*, *supra* at 399, held that "[r]emedial sanctions may be of varying types. One which is characteristically free of the punitive criminal element is revocation of a privilege voluntarily granted." This portion of *Helvering* v. *Mitchell* is undisturbed by more recent changes in double jeopardy jurisprudence.

Revocation of this privilege has long reflected public safety concerns. The first statute requiring drivers' licenses was promulgated in 1903.[14] Even then, one could obtain a driver's license only on "pass[ing] such examination as to his qualifications as may be required by the state highway commission," St. 1903, c. 473, § 4, and one's driver's license was revoked for "operat[ing] an automobile or motor cycle . ... recklessly or while under the influence of intoxicating liquor or so as to endanger the lives or safety of the public." St. 1906, c. 412, § 4.

Mandatory license suspension is but one of several provisions of the motor vehicle laws aimed at preserving public safety. The regulatory scheme provides for residential and

---

[14]Statute 1903, c. 473, is the original precursor of G. L. c. 90, the present statute governing motor vehicles and aircraft.

out-patient alcohol treatment programs, written and practical tests on the rules of the road, safety features in motor vehicles, as well as annual inspections of motor vehicles. G. L. c. 90, §§ 7, 7A, 8, 24 (1) (*a*) (4). See *Gordon* v. *Bedard*, 265 Mass. 408, 412 (1929) (driver's licensing statute "was passed to make roads more safe and convenient for travellers"). Massachusetts courts have recognized the public safety objective of portions of G. L. c. 90. See *Commonwealth* v. *Dowler*, 414 Mass. 212, 215 n.6 (1993) (main function of G. L. c. 90, § 24, is to improve public safety by removing drivers under the influence of alcohol from the Commonwealth's roads). See also *Commonwealth* v. *Callen*, 26 Mass. App. Ct. 920, 922 (1988) (person charged with drunken driving who "turns up with [high] blood alcohol content must be thought of as a menace to public safety"; "it makes sense to relieve him of his license"); *Commonwealth* v. *Thorpe*, 13 Mass. App. Ct. 906, 907 (1982) ("The suspension or revocation of a license is not 'punishment' for the purposes of G. L. c. 90, § 20 . . . ").

Chapter 90, § 24 (1) (*f*) (1), provides that "[w]hoever operates a motor vehicle upon any way . . . shall be deemed to have consented to submit to a chemical test or analysis of his breath or blood in the event that he is arrested for operating a motor vehicle while under the influence of intoxicating liquor . . . ." The police are to provide the arrested person with an opportunity to take or to refuse to take the breath or blood test and inform him that if he refuses his license will be suspended by the registrar. If he refuses, the police must provide the arrested person with a notice from the registrar of intent to suspend the license. The individual whose license is suspended is entitled to a hearing before the registrar within fifteen days of arrest.[16] A temporary license is pro-

---

[16]There are only three issues considered at the hearing before the registrar: (1) did the police officer have reasonable grounds to believe the individual had been operating a motor vehicle while under the influence of intoxicating liquor; (2) was the individual placed under arrest; and (3) did such person refuse to submit to a blood or breath test. G. L. c. 90, § 24 (1) (*g*).

vided for the duration of this fifteen-day period, effective twelve hours after issuance. If the registrar finds that the police acted properly, the license is suspended for 120 days for a first offense, 180 days for a second offense, and for progressively longer periods of time for each additional offense under c. 90, § 24.

The remedial purpose of c. 90, § 24 (1) (*f*) (1), was expressly recognized by the United States Supreme Court in *Mackey* v. *Montrym*, 443 U.S. 1, 15 (1979). The Court stated: "The Commonwealth must have the authority, if it is to protect people from drunken drivers, to require that the breath-analysis test record the alcoholic content of the bloodstream at the earliest possible moment." This purpose is served in various ways by the suspension of a driver's license on arrest. The suspension serves to deter persons from driving while intoxicated; it effectuates the Commonwealth's interest in obtaining reliable and relevant evidence by inducing suspected drunk drivers to take the breath test; and it promotes safety on the highways by summary removal of dangerous drivers. *Id.* The ALS is not overwhelmingly disproportionate to its remedial purposes or the harm caused society by drunk drivers. See *South Dakota* v. *Neville*, 459 U.S. 553, 558 (1983) ("The carnage caused by drunk drivers is well documented . . ."). Most other States also have recognized the remedial, nonpunitive nature of administrative license suspensions.[16]

---

[16]Post-*Kurth Ranch*: *State* v. *Zerkel*, 900 P.2d 744, 758 (Alaska Ct. App. 1995) ("We conclude that administrative license revocation continues to be a 'remedial' sanction, not a punitive sanction for purposes of the federal double jeopardy clause"); *Marzolf* v. *Superior Court*, 185 Ariz. 144, 150 (Ct. App. 1995) (because an ALS "does not go beyond what is reasonably necessary to remove drunk drivers from the road, it is fair to classify its purpose as remedial in toto. Therefore, the suspension . . . was not 'punishment' for Double Jeopardy purposes"); State v. Fox, No. MV94 31 52 60 (Conn. Super. Ct. Sept. 13, 1995) (ALS not punitive for double jeopardy purposes); State v. Schwander, Nos. IN94-08-1350—IN94-08-1351, IN94-08-1352, IN94-08-1353, IN94-08-1354 (Del. Super. Ct. June 15, 1995) (Delaware's informed consent statute is remedial because its purpose is to protect public safety); *Davidson* v. *MacKinnon*, 656 So. 2d 223, 225 (Fla. Dist. Ct. App. 1995) ("the administrative

License revocation is akin to a restraining order or injunction. Its purpose is to protect the public from future harm by

remedy of suspending a driver's license because of drunk driving or other related behavior was and continues to be primarily for the purpose of enhancing safe driving on the public highways"); *Jackson* v. *State*, 218 Ga. App. 677 (1995) (ALS reasonably related and not disproportionate to the State's remedial purpose of removing dangerous and habitually negligent drivers from roadways); *State* v. *Higa*, 79 Hawaii 1 (1995) (ALS proceedings serve legitimate, nonpunitive, and purely remedial functions); *State* v. *Talavera*, 127 Idaho 700 (1995) (remedial purpose of ALS apparent and "directly addresses the problems of removing drivers from the road who should not be driving"); *State* v. *Funke*, 531 N.W.2d 124, 126 (Iowa 1995), quoting *State* v. *Marvin*, 307 N.W.2d 10, 12 (Iowa 1981) (license suspension of habitual drunk driving offenders designed "not to punish the offender, but to protect the public"); *State* v. *Savard*, 659 A.2d 1265, 1268 (Me. 1995) ("we conclude that any punitive or deterrent purpose served by the suspension of an operator's driver's license following an arrest for OUI is merely incidental to the overriding purpose intended by the Legislature to provide the public with safe roadways"); *State* v. *Jones*, 340 Md. 235, 256 (Ct. App. 1995) (ALS not punishment for double jeopardy purposes); *State* v. *Parker*, 538 N.W.2d 141 (Minn. Ct. App. 1995) (180-day revocation rationally related to the remedial purpose of ALS statute); *State* v. *Young*, 3 Neb. App. 539 (1995) (civil license revocation is remedial, not punishment); *State* v. *Cassady*, 140 N.H. 46 (1995) (sanction of license revocation not criminal punishment for purposes of double jeopardy); *State ex rel. Schwartz* v. *Kennedy*, 120 N.M. 619, 625-626 (1995) (driver's license revocations not punishment for purposes of double jeopardy); *People* v. *Frank*, 166 Misc. 2d 277, 281 (N.Y. Crim. Ct. 1995) (primary purpose of license suspension pending prosecution remedial rather than punitive); *State* v. *Zimmerman*, 539 N.W.2d 49, 50 (N.D. 1995) ("We conclude the criminal and administrative proceedings do not constitute double jeopardy because the administrative action serves the remedial goal of protecting the public from impaired drivers, and the suspension of the license is not greatly disproportionate to the remedial goal"); State v. Miller, No. 2-94-32 (Ohio Ct. App. May 12, 1995) (ALS remedial in nature and does not constitute punishment under the double jeopardy clause); State v. Sims, No. CA94-12-215 (Ohio Ct. App. Aug. 21, 1995) (ALS nonpunitive in nature); *Voisinet* v. *State*, 909 S.W.2d 262 (Tex. Ct. App. 1995) (driver's license is not suspended for the purpose of visiting additional punishment upon an offender but in order to protect the public against incompetent and careless drivers); *Tench* v. *Commonwealth*, 21 Va. App. 200 (1995) (ALS is not punishment); *State* v. *McMaster*, 198 Wis. 2d 542 (Ct. App. 1995) (administrative suspension of driving privileges not punishment for double jeopardy purposes).

Pre-*Kurth Ranch*: *State* v. *Nichols*, 169 Ariz. 409 (1991) (double jeopardy clause does not bar criminal prosecution for driving under the influence after suspension of driver's license); *Ellis* v. *Pierce*, 230 Cal. App. 3d

depriving the unsafe or irresponsible driver of his or her authority to continue to operate a motor vehicle. Because its main purpose is public safety rather than punishment, revocation of a driver's license is properly characterized as nonpunitive.

In other contexts, license revocation is recognized as a public safety measure rather than punishment. As early as 1933, the Justices recognized the nonpunitive purposes of licensing businesses and activities that could result in danger to the public. See *Opinion of the Justices*, 282 Mass. 619, 626 (1933) ("Necessary and lawful business of a nature liable, in the absence of regulation and supervision, to harm the public health, the public safety, or the public morals, may be required to be licensed"). Accord *Piro* v. *National Transp. Safety Bd.*, 66 F.3d 335 (9th Cir. 1995) (loss of pilot's license not punishment as it bears rational relationship to gov-

---

1557, 1560 (1991) (immediate purpose of suspension statute is to obtain the best evidence of blood-alcohol content, long-range purpose is to reduce highway injuries by inhibiting intoxicated persons from driving; neither of these purposes is deterrent or retributive so neither is punitive); *Freeman* v. *State*, 611 So. 2d 1260, 1261 (Fla. Dist. Ct. App. 1992), cert. denied sub nom. *Lindemann* v. *Florida*, 510 U.S. 957 (1993) (purpose of statute providing for revocation of driver's license is to provide administrative remedy for public protection, not to punish offender); *State* v. *Maze*, 16 Kan. App. 2d 527, 535 (1992) ("The revocation of a driver's license is part of a civil/regulatory scheme that serves a vastly different governmental purpose from criminal punishment. Our State's interest is to foster safety by temporarily removing from public thoroughfares those licensees who have exhibited dangerous behavior, which interest is grossly different from the criminal penalties that are available in a driving while under the influence prosecution"); *Butler* v. *Department of Pub. Safety & Corrections*, 609 So. 2d 790, 797 (La. 1992) (primary effect of license suspension statute remedial); *Johnson* v. *State*, 95 Md. App. 561 (1993) (purpose of license revocation statute is to protect other drivers on the road from those who would drive while intoxicated and to deter drunk drivers); *State* v. *Strong*, 158 Vt. 56 (1992) (suspension of license was not punishment for purposes of double jeopardy clause).

We are aware of only one appellate court case holding that ALS implicates double jeopardy. *State* v. *Gustafson*, No. 94 C.A. 232 (Ohio Ct. App. June 27, 1995), appeal allowed, 73 Ohio St. 3d 1427 (1995) (subsequent prosecution precluded because ALS had deterrent effect and therefore was punitive) (other Ohio intermediate appellate courts take the opposite view; see cases cited above).

ernment's interest in promoting air safety). Additionally, loss of a professional license in an administrative proceeding is not "punishment" for double jeopardy purposes. See *Kvitka v. Board of Registration in Medicine*, 407 Mass. 140, 146 n.4, cert. denied, 498 U.S. 823 (1990) ("We note that revocation of a physician's license is considered to be remedial under the double jeopardy clause"); *Feldstein v. Board of Registration in Medicine*, 387 Mass. 339, 341-342 (1982); *Arthurs v. Board of Registration in Medicine*, 383 Mass. 299, 316-317 (1981). See also *People v. Marmon*, 903 P.2d 651 (Colo. 1995) (disbarment serves public safety purpose).

Other losses of privileges have similarly been recognized as regulatory rather than punitive. *United States v. Hudson*, 14 F.3d 536, 541-542 (10th Cir. 1994) (revocable ban from participation in banking activities); *United States v. Bizzell*, 721 F.2d 263, 267 (10th Cir. 1990) (debarment from participation in Federal program); *United States v. Furlett*, 974 F.2d 839, 844-845 (7th Cir. 1992) (trading ban prohibiting defendant from trading on any contract market); *No Illegal Points, Citizens for Drivers Rights, Inc. v. Florio*, 264 N.J. Super. 318 (1993) (point system for motor vehicle violations).

Licenses are not only revoked because of criminal activity. Drivers' licenses may be revoked for a variety of noncriminal offenses including misuse of license and identification cards, nonsatisfaction of judgments, incompetency, failure to pay child support, and "whenever the holder [of the license] has committed a violation of the motor vehicle laws of a nature which would give the registrar reason to believe that continuing operation by such holder is and will be so seriously improper as to constitute an immediate threat to the public safety." G. L. c. 90, § 22 (*a*) (1994 ed.). Thus, drivers' licenses may be revoked whenever the registrar believes that failure to revoke an operator's license will compromise public safety. The State's right to regulate licensing, of course, is constrained by due process limitations. See *Mackey v. Montrym*, 443 U.S. 1, 10 n.7 (1979); *Registrar of Motor*

*Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 589 (1981).

Luk argues that, because temporary suspension of the driver's license of a person who refuses to take a blood test is not the best way of ensuring safe highways, public safety could not have been the purpose behind license suspension. The Legislature has chosen an effective way of dealing with the problem of drivers who drive while intoxicated. The United States Department of Transportation's National Highway Traffic Safety Administration, has estimated that hundreds of lives are saved annually in this country because of administrative license revocation. See Traffic Tech, NHTSA Technology Transfer Series No. 24 (Mar. 1992). The decision of which is the most effective way of dealing with this pervasive problem is left to the Legislature. *Mackey* v. *Montrym, supra* at 16-17. See *Matter of Saab*, 406 Mass. 315, 324 n.13 (1989), quoting *Mackey, supra* at 13 ("The Due Process Clause simply does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations"). We note that empirical evidence indicates that of the three types of sanctions available under § 24 — confinement, fine, and license suspension — suspension is the most effective for purposes of general deterrence of OUI. Jiang Yu, Punishment Celerity and Severity: Testing a Specific Deterrence Model on Drunk Driving Recidivism, 22 J. Crim. Just. 355, 356 (1994).

We reject Luk's additional argument that, because the length of the suspension increases with the number of one's convictions under c. 90, § 24, not the number of times an operator refuses a breath test, the suspension is punishment for a suspected violation of c. 90, § 24. Luk ignores statistical evidence that the number of previous arrests for driving while intoxicated increases the risk to public safety. See Traffic Tech, NHTSA Technology Transfer Series No. 85 (Feb. 1995) (Approximately one-third of all drivers arrested or convicted of OUI each year are repeat OUI offenders. Drivers with prior OUI convictions are also overrepresented in fatal crashes and have a greater relative risk of fatal crash

involvement. The risk increases with the number of prior OUI arrests). See also *State* v. *Uncapher*, 70 Ohio Misc. 2d 4, 18-19 (1995) (length of suspension proportionate to degree of risk to the public; presumed that multiple drunk driving offenders are an increasingly greater risk to public safety with each offense).

Because we conclude that the Massachusetts administrative license suspension law is a reasonable sanction primarily designed to promote public safety, we hold that Massachusetts may suspend a license pursuant to c. 90, § 24 (1) (*f*) (1), and later bring criminal charges under c. 90, § 24 (1) (*a*) (1), without running afoul of the double jeopardy clause of the United States Constitution or Massachusetts common or statutory law.

C. *Separate offenses.* Double jeopardy is only violated if multiple prosecutions are brought or multiple punishments are imposed for the same offense. If the defendant is being twice punished for distinct offenses, double jeopardy is not offended. See *Commonwealth* v. *Diaz*, 383 Mass. 73, 84 (1981); *Commonwealth* v. *Burston*, 35 Mass. App. Ct. 355, 358 (1993). Operating under the influence and refusal to submit to a chemical test of the breath are distinct offenses. Neither offense requires the same elements nor the same conduct as the other.

The crime of operating while under the influence requires: (1) operation of a vehicle, (2) on a public way, (3) under the influence of alcohol.[17] *Commonwealth* v. *O'Connor*, 420 Mass. 630, 631 (1995). The offense of refusing to submit to a blood or breath test as sanctioned by G. L. c. 90, § 24 (1) (*g*), requires that (1) the police officer have reasonable grounds to believe the individual had been operating a

---

[17]General Laws c. 90, § 24 (1) (*a*) (1) (1994 ed.), which criminalizes operating while under the influence, provides, in pertinent part: "Whoever, upon any way or in any place to which the public has a right of access . . . operates a motor vehicle while under the influence of intoxicating liquor . . . shall be punished by a fine of not less than five hundred nor more than five thousand dollars or by imprisonment for not more than two and one-half years, or both such fine and imprisonment."

motor vehicle while under the influence of intoxicating liquor on a public way; (2) the individual was placed under arrest; and (3) such person refused to submit to a blood or breath test.

The offense of driving while intoxicated does not require that a breath or blood test be requested and refused. Evidence of refusal to submit to a blood test is inadmissible in the criminal prosecution. *Commonwealth* v. *McGrail*, 419 Mass. 774, 780 (1995). See *Opinion of the Justices*, 412 Mass. 1201 (1992) (refusal evidence is compelled and requires a citizen to furnish evidence against oneself, and that, therefore, admission of evidence of refusal is unconstitutional under art. 12 of Massachusetts Declaration of Rights).

The offense of refusing to submit to a breath or blood test does not require that the person actually be under the influence of alcohol. Evidence that the individual was driving while intoxicated is irrelevant in the refusal hearing. It is the refusal to submit to the breath or blood test that is determinative. Because each offense requires something that the other does not, they are not the same offense for purposes of double jeopardy. See *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871). See also *Commonwealth* v. *Woods*, 414 Mass. 343, 350-351, cert. denied, 510 U.S. 815 (1993). Accord *State* v. *Uncapher*, 70 Ohio Misc. 2d 4, 17 (1995) (in the case of refusal to take chemical test, the one-year suspension stands regardless of the driver's state of impairment, "excepting only that the officer have probable cause" to make an arrest; matter not subject to double jeopardy analysis); State v. Fitzgerald, No. 950158 (Ohio Ct. App. Nov. 22, 1995); State v. Sims, CA 94-12-215 (Ohio Ct. App. Aug. 21, 1995).

The Legislature specifically authorized separate sanctions for these separate offenses. The Legislature's direction is entitled to enforcement absent constitutional infirmity. See *Rushworth* v. *Registrar of Motor Vehicles*, 413 Mass. 265, 273-274 (1992). Even if the administrative license suspension were considered to be punishment, principles of double jeopardy are not violated when a person's license is suspended

pursuant to c. 90, § 24 (1) (*f*) (1), and that person is later criminally prosecuted for the offense of operating a motor vehicle while under the influence of alcohol. If "punished" at all, she is being "punished" for two separate offenses, a situation which the double jeopardy clause does not prohibit.[18] See *Morey, supra.*

*Judgment affirmed.*

---

[18]On the result we reach, we need not discuss whether the ALS and the criminal prosecution are "one proceeding."