JUSTICE NELSON
specially concurs.
I concur in our opinion. It is unfortunate, however, that we are not able to also ground our decision in what most courts agree is an even stronger argument for rejecting the double jeopardy challenge at issue here. Accordingly, I write separately to point out that because of a peculiar requirement of Montana’s implied consent law, one of the most recognized, obvious and common sense rationales for upholding the operation of this statute against a double jeopardy challenge is unavailable or is, at least, highly questionable.
Other state and federal jurisdictions that have upheld the administrative seizure, suspension or revocation of a driver’s license incident to an alcohol or drug-impaired driving violation and chemical-test refusal have done so on the basis that the administrative suspension of driving privileges is not “punishment.” Rather, with almost near unanimity, courts have focused their analysis on the non-punitive, remedial nature of administrative license suspensions. See, e.g. State v. Oliver (N.C. 1996), 470 S.E.2d 16; Luk v. Com. (Mass. 1995), 658 N.E.2d 664, and the numerous cases collected therein.
*469 This rationale is best explained in these two decisions.
An impaired driver presents an immediate, emergency situation, and swift action is required to remove the unfit driver from the highways in order to protect the public. We do not pretend to ignore that a driver’s license revocation, even of short duration, may, for some, have a deterrent effect. ... [Although] any deterrent effect a driver’s license revocation may have upon the impaired driver is merely incidental to the overriding purpose of protecting the public’s safety.
Oliver, 470 S.E. 2d at 21.
The suspension serves to deter persons from driving while intoxicated; it effectuates the Commonwealth’s interest in obtaining reliable and relevant evidence by inducing suspected drunk drivers to take the breath test; and it promotes safety on the highways by summary removal of dangerous drivers.
Luk, 658 N.E.2d at 671.
In the instant case, the State argues these same remedial objectives as justification for holding that double jeopardy is not implicated by both suspending the impaired driver’s license for refusal to submit to a chemical test and prosecuting him or her for DUI. Montana’s implied consent law, § 61-8-402, MCA, actually militates against that argument, however.
Under § 61-8-402(3), MCA, if a suspected driver refuses the peace officer’s request to submit to the designated test or tests the officer must “immediately seize the person’s driver’s license ... [and] ... forward the license to the department” which is then obligated to suspend the license for a designated period of time. Section 61-8-402(4), MCA, however, provides that “[u]pon seizure of a driver’s license [on refusal to take the chemical test], the peace officer shall issue... a temporary driving permit, which is valid for 5 days following the date of issuance.” (Emphasis added.)
In other words, in Montana, despite the fact that a driver is driving while intoxicated; despite the fact that a peace officer has reasonable grounds to arrest the driver for DUI; despite the fact that the driver refuses to take a chemical test of his blood, breath or urine under the implied consent law; and despite the fact that the officer immediately seizes the driver’s license pursuant to that statute, under the same statute the arresting officer must, while seizing the license with one hand, issue an immediately-effective temporary 5-day driving permit with the other.
*470 While liability implications and common sense would seem to make it inconceivable that a drunk driver actually would be issued a temporary permit as he leaves the stationhouse and that, in theory, he could simply get back in his vehicle and continue to drive while intoxicated (although being subject to re-arrest), that is exactly what § 61-8-402(3) and (4), MCA, allow, and, in fact, mandate.
Worse, at oral argument, Danichek convincingly argued that is exactly what happens on occasion. Under such circumstances, as Danichek correctly points out, it is absurd to maintain that immediate seizure of the impaired driver’s license under Montana’s implied consent law serves the remedial purpose of summarily removing the impaired driver from the road, thus, protecting the public safety, if that same drunk driver is also immediately issued a temporary driver’s permit as he leaves the police station and before he even sobers up.
Moreover, the government and the police should not be subjected to the sort of potential civil liability that is inherent in this statutory scheme. Under the very statute enacted to protect public safety, the arresting officer should not also, by law, be required to issue an intoxicated driver what may turn out to be a temporary license to kill.
This anomaly can be easily corrected legislatively; and, obviously, it should be. Section 61-8-402(4), MCA, should be amended to provide that the temporary permit issued will not become effective until after a period of time long enough to allow the impaired driver to regain his or her sobriety. Other states that allow for the issuance of a temporary driver’s license following an administrative seizure for failure to take a chemical test follow this approach. For example, Massachusetts allows a fifteen day temporary license to issue effective twelve hours after issuance. See Luk, 658 N.E.2d at 670.
I believe that the legislature intended that the operation of Montana’s implied consent statute serve the remedial purposes set forth above. I do not agree with Danichek that the purpose of this statute is punishment. Section 61-8-402, MCA, should be amended as suggested to remove any doubt and any question concerning its non-punitive objectives.
CHIEF JUSTICE TURNAGE and JUSTICES GRAY and LEAPHART join in the foregoing special concurrence.