PAUL J. SOUZA *vs.* REGISTRAR OF MOTOR VEHICLES
& another.[1]

Norfolk. February 6, 2012. - May 17, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Motor Vehicle,* Operating under the influence. *Statute,* Construction. *Practice, Criminal,* Conviction, Admission to sufficient facts to warrant finding. *Words,* "Convicted."

This court concluded that the Legislature did not intend an admission to sufficient facts for a finding of guilty to be treated as a conviction within the meaning of G. L. c. 90, § 24 (1) (*f*) (1), which requires the registrar of motor vehicles (registrar) to suspend an arrested driver's license for three years for refusal to submit to a breathalyzer test if the driver has been previously convicted of operating a motor vehicle while under the influence of intoxicating liquor (OUI); accordingly, where an individual who previously had admitted to sufficient facts for a finding of guilty of OUI subsequently refused to submit to a breathalyzer test, the registrar was not authorized to suspend the individual's driver's license for more than 180 days. [230-235]

CIVIL ACTION commenced in the Superior Court Department on October 1, 2010.

The case was heard by *Elizabeth B. Donovan,* J., on a motion for judgment on the pleadings.

The Supreme Judicial Court granted an application for direct appellate review.

*Dana Alan Curhan (Joseph P. Cataldo* with him) for the plaintiff.

*David R. Marks,* Assistant Attorney General, for the defendants.

*Brian E. Simoneau & Peter B. Krupp,* for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.

BOTSFORD, J. This case turns on the interpretation of the word

---

[1]Board of appeal on motor vehicle liability policies and bonds.

"convicted" in G. L. c. 90, § 24 (1) (f) (1), a statute providing for the suspension of a driver's license for refusal to submit to a test for blood alcohol content (breathalyzer test) on arrest for operating a motor vehicle while under the influence of intoxicating liquor. We conclude that as used in the statute, "convicted" references only dispositions of criminal charges that include a determination of guilt. Accordingly, we reverse the judgment of the Superior Court.

1. *Background.* The facts are undisputed. In 1997, the plaintiff was arrested for operating a motor vehicle while under the influence of intoxicating liquor (OUI), a violation of G. L. c. 90, § 24 (1) (a) (1). He admitted to sufficient facts for a finding of guilty; he did not plead guilty. His case was continued without a finding and later dismissed after he had successfully completed the terms of his probation, including assignment to an alcohol education program. The plaintiff was arrested again for OUI on January 14, 2010. He refused to submit to a breathalyzer test. Thereafter, the registrar of motor vehicles (registrar) suspended the plaintiff's driver's license for three years on account of his refusal to take the test. Pursuant to G. L. c. 90, § 24 (1) (f) (1) (§ 24 [1] [f] [1]), the registrar is required to suspend an arrested driver's license for three years for refusal to submit to a breathalyzer test if the driver has been previously "convicted" of an OUI offense. If the driver has not been previously convicted, the license suspension period is 180 days. *Id.*

The plaintiff appealed from the registrar's decision to the board of appeal on motor vehicle liability policies and bonds (board), arguing that his license should only have been suspended for 180 days because he had never previously pleaded guilty to or been found guilty of OUI. Therefore, he claimed, he had not previously been "convicted" of OUI. The board affirmed the registrar's decision. The plaintiff then sought review of the board's decision in the Superior Court under G. L. c. 30A, § 14. After hearing, a judge in that court affirmed the board's decision. We granted the parties' joint application for direct appellate review.[2,3]

2. *Standard of review.* "In general, we give 'substantial defer-

---

[2]We acknowledge the amicus brief of the Massachusetts Association of Criminal Defense Lawyers.

[3]After argument in this matter, the plaintiff's attorney filed a suggestion of

ence' to an agency's interpretation of those statutes which it is charged with enforcing." *Providence & Worcester R.R.* v. *Energy Facilities Siting Bd.*, 453 Mass. 135, 141 (2009). Deference is particularly appropriate when the statute in question explicitly grants broad rule-making authority to the agency, see *Goldberg* v. *Board of Health of Granby*, 444 Mass. 627, 634 (2005), contains an ambiguity or gap, see *Zoning Bd. of Appeals of Amesbury* v. *Housing Appeals Comm.*, 457 Mass. 748, 759 (2010), or broadly sets out a legislative policy that must be interpreted by the agency. See *Massachusetts Org. of State Eng'rs & Scientists* v. *Labor Relations Comm'n*, 389 Mass. 920, 924 (1983), quoting *School Comm. of Springfield* v. *Board of Educ.*, 362 Mass. 417, 442 (1972). We also must give deference to the agency's "experience, technical competence, and specialized knowledge," where relevant. G. L. c. 30A, § 14 (7). See, e.g., *Alliance to Protect Nantucket Sound, Inc.* v. *Department of Pub. Utils.*, 461 Mass. 166, 178 (2011), quoting *Cambridge* v. *Department of Telecomm. & Energy*, 449 Mass. 868, 875 (2007) (deferring to agency's interpretation of undefined statutory term in case involving "complex statutory and regulatory framework"); *Springfield* v. *Department of Telecomm. & Cable*, 457 Mass. 562, 568 (2010) ("Because of its specialized knowledge, technical competence, and experience in the cable television industry, the department possesses the expertise to determine whether the language in question constitutes a term of art in that industry").

The issue of statutory interpretation raised in this case — how "convicted" should be defined in § 24 (1) (*f*) (1), as appearing in St. 2005, c. 122, § 9 (known as "Melanie's Law") — does not involve any gaps in the statute that the board or the registrar (collectively, board) needs to flesh out in order to give the statute meaning. Moreover, the board's specialized knowledge relating to motor vehicles and driving rules does not give it any special competence to determine what the Legislature meant by "convicted," a term that is unrelated to these subjects. Because

mootness. The plaintiff was acquitted of operating while under the influence, and his driver's license was restored. However, because the case has been fully briefed and raises issues of public importance that are capable of repetition but evading review, we decide the issue. See *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 782-783 (1984).

the interpretive question here is purely a legal one, and because "[t]he duty of statutory interpretation rests ultimately with the courts," we review the board's interpretation de novo. *Boston Hous. Auth.* v. *National Conference of Firemen & Oilers, Local 3*, 458 Mass. 155, 164 (2010), quoting *Town Fair Tire Ctrs.* v. *Commissioner of Revenue*, 454 Mass. 601, 605 (2009). See *Bulger* v. *Contributory Retirement Appeal Bd.*, 447 Mass. 651, 657 (2006) ("We exercise de novo review of legal questions . . . and we must overturn agency decisions that are not consistent with governing law"); *Raytheon Co.* v. *Director of the Div. of Employment Sec.*, 364 Mass. 593, 595 (1974) ("to the extent that an agency determination involves a question of law, it is subject to de novo judicial review").

3. *Discussion.* Section 24 (1) (*f*) (1) provides in relevant part:

> "Whoever operates a motor vehicle upon any way or in any place to which the public has right to access . . . shall be deemed to have consented to submit to a chemical test or analysis of his breath or blood in the event that he is arrested for operating a motor vehicle while under the influence of intoxicating liquor . . . . If the person arrested refuses to submit to such test or analysis . . . no such test or analysis shall be made and he shall have his license or right to operate suspended in accordance with this paragraph for a period of 180 days; provided, however, that any person who is under the age of 21 years or who has been *previously convicted of a violation* under this section, [various other sections of c. 90], or a like violation by a court of any other jurisdiction shall have his license or right to operate suspended forthwith for a period of 3 years for such refusal . . ." (emphasis added).

In order to determine who has been "previously convicted of a violation," we first must look to G. L. c. 90, § 24 (1) (*d*) (§ 24 [1] [*d*]), which defines the term "convicted" for purposes of all the subsections of § 24 (1). The pertinent part of § 24 (1) (*d*) reads:

> "For the purposes of subdivision (1) of this section [i.e., § 24 (1)], a person shall be deemed to have been convicted if he pleaded guilty or nolo contendere or was found or adjudged guilty by a court of competent jurisdic-

tion, whether or not he was placed on probation without sentence or under a suspended sentence or the case was placed on file . . . ."

"A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001). By its terms, the definition of "convicted" in § 24 (1) (*d*) — and derivatively, the meaning of "convicted of" in § 24 (1) (*f*) (1) — confines itself to a guilty plea, a plea of nolo contendere, a finding of guilty, or a judgment of guilty. The definition makes no mention of an admission to sufficient facts; an assignment to an alcohol education, treatment, or rehabilitation program (program assignment); or a continuance without a finding (CWOF). Evaluated in connection with the plain words of the statutory definition, the plaintiff's 1997 disposition, namely, the admission to sufficient facts followed by a CWOF and a program assignment, does not qualify him as someone who has been previously "convicted of" OUI.

The board's main argument, articulated in several slightly different ways, comes down to the same fundamental premise: that "convicted" in § 24 (1) (*f*) (1) must be interpreted not solely according to its plain meaning, but in light of the remedial purpose of Melanie's Law, namely, "to increase penalties for drunk drivers in the Commonwealth." St. 2005, c. 122, preamble. In light of this purpose and prior decisions of this court, it argues, the plaintiff's 1997 admission to sufficient facts should be considered the equivalent of a guilty plea and therefore the registrar properly treated the plaintiff as previously having been "convicted of" OUI.

We have several concerns with this purpose-centered argument. Melanie's Law amended § 24 (1) (*f*) (1) by increasing the periods of license suspension for refusal to submit to a breathalyzer test, but it did not amend the definition of "convicted" in § 24 (1) (*d*). Accordingly, it is inappropriate to look to Melanie's Law as the source of justification for reading this term in a more expansive manner than applied before Melanie's Law was enacted. Even if we were to consider the purpose of

Melanie's Law, we are not at liberty to construe the statute in a manner that might advance its purpose but contravenes the actual language chosen by the Legislature. See *Franklin* v. *Wyllie*, 443 Mass. 187, 196 (2005) (although town's proposed interpretation of G. L. c. 61A, § 14, would further statutory purpose, court adopted interpretation advanced by defendant purchasers because "the result is constrained by the actual language of the statute").

If the Legislature, in enacting Melanie's Law, had wanted to include an admission to sufficient facts in the definition of "convicted," it could have done so explicitly by amending § 24 (1) (*d*). Alternatively, if the Legislature had wanted to ensure that an admission to sufficient facts, like a guilty plea, would serve as a basis for imposing longer periods of license suspension on account of refusing a breathalyzer test, it could have amended § 24 (1) (*f*) (1) to provide that license suspension penalties would be heightened for drivers who previously had been convicted of OUI *or* admitted to sufficient facts for a finding of guilty. In this regard, it is significant that the Legislature used these phrases in other subsections and paragraphs of § 24. "[W]here the Legislature has employed specific language in one paragraph, but not in another, the language should not be implied where it is not present." *Commonwealth* v. *Galvin*, 388 Mass. 326, 330 (1983), quoting *Beeler* v. *Downey*, 387 Mass. 609, 616 (1982). See G. L. c. 90, § 24 (1) (*a*) (1), second and third pars. ("There shall be an assessment . . . against a person who is *convicted of*, is placed on probation for, or is granted a continuance without a finding for or otherwise pleads guilty to *or admits to a finding of sufficient facts* [of OUI] . . ." [emphasis added]); G. L. c. 90, § 24 (2) (*a*), second par. (same).[4] Cf. G. L. c. 90, § 24 (1) (*c*) (2) (license revocation period as consequence of conviction extended where "such person has been previously *convicted of or assigned to an alcohol or controlled substance education, treatment or rehabilitation program*" [emphasis added]).

---

[4]This distinction between convictions and other types of dispositions was present in G. L. c. 90, § 24, before the amendments made by Melanie's Law in 2005. See G. L. c. 90, § 24 (1) (*c*) (2), as appearing in St. 1982, c. 373, § 4; G. L. c. 90, § 24 (1) (*a*) (1), as amended through St. 1999, c. 127, § 108. Significantly, the distinction also is reflected in Melanie's Law itself. See St. 2005, c. 122, §§ 3, 4, 5, 13, 17.

Moreover, if we accept the board's argument that the definition of "convicted" in § 24 (1) (*d*) implicitly includes admissions to sufficient facts, then this latter term becomes superfluous in § 24 (1) (*a*) (1) and § 24 (2) (*a*). An interpretation of a statute should not fail to give effect to any of its terms or render them "inoperative or superfluous." *Connors* v. *Annino*, 460 Mass. 790, 796 (2011), quoting *Wheatley* v. *Massachusetts Insurers Insolvency Fund*, 456 Mass. 594, 601 (2010). In sum, under established rules of statutory construction, it would be improper to read admissions to sufficient facts into the definition of "convicted" in § 24 (1) (*d*) or § 24 (1) (*f*) (1).

The board's argument that any interpretation other than the one it advances would fail to effectuate the goal of Melanie's Law, in relation to § 24 (1) (*f*) (1), or would lead to an absurd result, is inaccurate. While our interpretation of § 24 (1) (*f*) (1) here does not increase the length of license suspension for the plaintiff in the particular circumstances of his case, the interpretation does nothing to interfere with the Melanie's Law enhancement of many penalties for drunk drivers, including increasing the maximum penalty under § 24 (1) (*f*) (1), as amended through St. 2003, c. 28, § 5, for failure to take a breathalyzer test from a suspension of eighteen months to a lifetime suspension (St. 2005, c. 122, § 9); and increasing the length of time that drivers whose licenses are suspended for OUI convictions or program assignments under a separate provision, G. L. c. 90, § 24 (1) (*c*), must wait before applying for a hardship license (St. 2005, c. 122, §§ 4, 5).

While the board may not approve of this result as a matter of policy, it is not absurd. We have recognized that an admission to sufficient facts and an associated continuance without a finding constitute "a procedure which often serves the best interests of both the Commonwealth and the defendant. The benefit to a defendant is obvious: he may be able to avoid a trial and 'earn' a dismissal of the indictment or complaint, thereby avoiding the consequences of having a criminal conviction on his record. These advantages would be especially appealing to a first offender or a defendant whose job security or family situation might be threatened by a conviction." *Commonwealth* v. *Duquette*, 386 Mass. 834, 843 (1982). Thus, it is not unreasonable

for an admission to sufficient facts, followed by a continuance without a finding and eventual dismissal, to carry different (and more favorable) consequences than a plea or finding of guilty on the same charge.

In arguing for the opposite result, the board points to a number of this court's decisions treating an admission to sufficient facts as the equivalent of a guilty plea. We disagree that those decisions control in the context of this case. Those cases presented in a light very different from this case, namely, what procedural protections should be afforded to a defendant who admits to sufficient facts to warrant a guilty finding in a criminal case rather than pleads guilty. See, e.g., *Commonwealth* v. *Greene*, 400 Mass. 144, 145-146 (1987) (stating in dicta that knowing and voluntary admission to sufficient facts, like guilty plea, could be treated as waiver of nonjurisdictional defects for purposes of determining appeal rights); *Commonwealth* v. *Duquette*, 386 Mass. at 841-842 (requiring colloquy to assess understanding and voluntariness when defendant admits to sufficient facts rather than pleading guilty at final stage of District Court proceeding). See also *Commonwealth* v. *Villalobos*, 437 Mass. 797, 800 (2002), and cases cited (warnings of potential immigration consequences under G. L. c. 278, § 29D, must be given to noncitizen defendants who admit to sufficient facts, although statute only applies on its face to guilty or nolo contendere pleas); G. L. c. 278, § 18, second par. ("If a defendant . . . attempts to enter a plea or statement consisting of an admission of facts sufficient for finding of guilt, or some similar statement, such admission shall be deemed a tender of a plea of guilty *for purposes of the procedures set forth in this section*" [emphasis added]).[5] As these cases and the cited statute illustrate, an admission to sufficient facts may entitle a criminal

_____

[5]The board cites *Luk* v. *Commonwealth*, 421 Mass. 415, 418 n.6 (1995), as "recogniz[ing] that the definition of conviction in G. L. c. 90, § 24 (1) (*d*) includes an admission to sufficient facts." We disagree. The cited footnote reads: "Admission to sufficient facts to warrant a finding of guilty is treated as a plea of guilty. *Commonwealth* v. *Duquette*, 386 Mass. 834, 841 (1982). See *Commonwealth* v. *Greene*, 400 Mass. 144, 145-146 (1987) . . . . See also G. L. c. 90, § 24 (1) (*d*) (1994 ed.)." *Luk* v. *Commonwealth, supra.* We read this footnote as a statement of the point we have discussed in the text, namely, that in the context of considering what procedural protections should be afforded to defendants who admit to sufficient facts rather than plead

defendant to protections such as a colloquy to ensure that his admission is voluntary and intelligent or warnings about potential immigration consequences.[6] But the cases provide no guidance concerning whether the board is entitled to treat an admission to sufficient facts in a prior criminal case as a conviction for purposes of an administrative driver's license suspension.

4. *Conclusion.* For the reasons stated, we conclude that the Legislature did not intend an admission to sufficient facts to be treated as a conviction pursuant to G. L. c. 90, § 24 (1) (*f*) (1). Accordingly, the registrar was not authorized pursuant to that statute to suspend the plaintiff's driver's license for more than 180 days on account of his refusal to take a breathalyzer test, because the plaintiff had not previously been convicted of a violation of G. L. c. 90, § 24.

*Judgment reversed.*

---

guilty, these two dispositions should be considered as functional equivalents. It is not clear what the reference to § 24 (1) (*d*) in the footnote was intended to signify, but we do not understand it to represent or embody a determination by this court that the term "conviction" or "convicted" as used in § 24 (1) (*d*) includes an admission to sufficient facts.

[6]We provide the same procedural protections to defendants who admit to sufficient facts and those who plead guilty because if a defendant who admitted to sufficient facts were to violate his or her probation and have it revoked, a conviction would enter without a new plea hearing. See *Commonwealth* v. *Villalobos*, 437 Mass. 797, 801 (2002).