Leibensperger, Edward P., J.
Plaintiff, Eleanor Callahan, seeks judicial review of a decision by the Board of Appeal on Motor Vehicle Liability Policies and Bonds (“the Board”) which affirmed the decision of the Registrar of Motor Vehicles (“the Registrar”) to deny her application for reinstatement of her license. Callahan moves for judgment on the pleadings pursuant to G.L.c. 30A, §14 and Mass.R.Civ.P. 12(c). After areview of the record and oral argument, Callahan’s motion will be DENIED for the reasons set forth below.
BACKGROUND
The record before the Board contained the following facts. On October 30, 1988, a Lewisboro, New York police officer charged Callahan with three violations of New York State’s Vehicle Traffic Law (“VTL”). Callahan was charged with driving while intoxicated per se under VTL §1192.2,[1] driving while intoxicated under VTL §1192.3,[2] and driving left of the pavement marking under VTL § 1126a. In satisfaction of these charges, on January 23, 1989, Callahan pleaded guilty to driving while ability is impaired (“DWAI”) under VTL 1192.I[3] and was fined $250. According to the “Certificate of Conviction” issued by the Justice Court of the Town of Lewisboro, Callahan was “convicted upon a plea of guilty” for DWAI and her guilty plea was denoted as “a violation, in full satisfaction of all charges.”
On January 6, 1998, Callahan again operated a motor vehicle while under the influence of alcohol, this time with fatal consequences. Callahan struck a parked motor vehicle in Boxborough, Massachusetts, causing it to collide with a passenger who had just stepped outside of the parked vehicle. The passenger was pinned under the vehicle and later died from her injuries. Immediately following the incident, on January 8, 1998, the Boxborough police department filed a request with the Registrar for an immediate threat license suspension. By letter dated January 9, 1998, the Registrar imposed an indefinite suspension pursuant to G.L.c. 90, §22(a) because it found that Callahan’s continued operation of a motor vehicle posed an “immediate threat” to public safety.[4]
In connection with this incident, Callahan pleaded guilty on April 6, 1999, to homicide by motor vehicle while operating under the influence of an intoxicating liquor (“OUI”) in violation of G.L.c. 90, §24G. Callahan was convicted and sentenced to two and a half years in the House of Correction, one year to be served with the balance suspended for a ten-year term of probation. As a result, the Registrar revoked Callahan’s license for her lifetime pursuant to G.L.c. 90, §24(l)(c)(4) effective June 7, 1999.
After the conclusion of her ten-year probationary period, Callahan applied to the RMV for reinstatement of her driving privileges. On June 18, 2010, the Registrar denied Callahan’s application because of the lifetime revocation of her license. Callahan appealed this decision, which proceeded to a hearing conducted before the Board on March 2,2011. On June 11, 2011, the Board affirmed the Registrar’s decision and dismissed Callahan’s appeal. The Board concluded that G.L.c. 90, §24( 1)(c)(4), as it existed at the time of Callahan’s 1998 motor vehicle homicide conviction, required the Registrar to revoke Callahan’s license because she was twice convicted of OUI and her second OUI resulted in a fatality. The Board’s decision noted that “(t]he New York crime of driving while impaired is very similar to the Massachusetts crime of OUI ... in that impairment of the ability to drive by alcohol to any extent is the operative element of both crimes” and, accordingly treated her DWAI conviction as the equivalent of a prior Massachusetts OUI conviction.
Callahan timely appealed the Board’s decision to Superior Court (Kaplan, J.) pursuant to G.L.c. 30A.[5] In an order dated January 20,2012, the Court vacated the decision and remanded it for a determination of whether a New York DWAÍ conviction could be considered an OUI conviction under G.L.c. 90, §24(l)(c)(4), and if the Board should exercise its discretion under G.L.c. 90, §28 to modify the Registrar’s decision.
On remand, a hearing was held before the Board on August 29, 2012. Almost one year later, in a Finding and Order issued on August 16, 2013, the Board modified the Registrar’s decision and reinstated Callahan’s license subject to an 8:00 am to 8:00 pm hardship license and the installation of an ignition interlock device in her vehicle. In this Order, the Board advised Callahan that “the Board reserves the right to *442 review this decision in light of new information being provided to the Board, or if new offenses or evidence of substance abuse occurred after the date of this hearing are reported to the Board.” A month later, the Board, in a second Order dated September 11, 2013, revoked the reinstatement of Callahan’s license before it went into effect and scheduled a de novo hearing on the merits. The second Order explained that “one sitting Board member [of the August 29, 2012 hearing] was unable to complete deliberations on this matter. This [B]oard finds that justice requires this matter to be heard and decided by a full [Board] panel.”
The de novo hearing was held before a three-member panel of the Board on November 13, 2013. The Board’s decision, issued on December 18, 2013, upheld the Registrar’s lifetime revocation of Callahan’s license.[6] The Board concluded that the requirements of G.L.c. 90, §24(l)(c)(4) were met because the New York DWAI is so substantially similar to a Massachusetts OUI that Callahan’s guilty plea for the DWAI should be considered a prior OUI conviction. In addition, the Board noted that although it did have discretion to modify the Registrar’s decision, it would not exercise that discretion to order the Registrar to return Callahan’s license because Callahan did not show she had an extraordinary hardship. The Board observed that, in the interest of public safety, it could not overlook Callahan’s testimony from hearings before the Board in March 2011 and November 2013 that she resumed alcohol use following her convictions.
Callahan now seeks judicial review of the Board’s decision pursuant to G.L.c. 30A.
DISCUSSION
A.Standard of Review
Pursuant to G.L.c. 30A, §14, the Court must uphold the Board’s decision unless the decision is unsupported by substantial evidence, arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law. Registrar of Motor Vehicles v. Bd. of Appeal on Motor Vehicle Liability Policies and Bonds, 382 Mass. 580, 591 (1981). The Court gives substantial deference to an agency’s interpretation of those statutes with which it is charged with enforcing. “Deference is particularly appropriate when the statute in question explicitly grants broad rule-making authority to the agency, contains an ambiguity or gap, or broadly sets out a legislative policy that must be interpreted by the agency.” Souza v. Registrar of Motor Vehicles, 462 Mass. 227, 229 (2012) (citations omitted). In addition, “[t]he [C]ourt shall give due weight to the experience, technical competence and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” G.L.c. 30A, §14(7). As the party appealing the administrative decision, Callahan bears the burden of demonstrating the decision’s invalidity. Marisme v. Bd. of Appeals on Motor Vehicle Liability Policies and Bonds, 27 Mass.App.Ct. 470, 474 (1989). That said, however, the Court exercises de novo review of legal questions and will not affirm agency decisions or interpretations of statutoiy language that are “inconsistent with governing law.” Town of Plymouth v. Civil Serv. Comm’n., 426 Mass. 1, 5 (1997), citing cases.
B.Challenges to the Board’s Decision
Callahan advances two arguments. First, she argues that “conviction,” for purposes of G.L.c. 90, §24(1) (c)(4), refers only to a disposition of a criminal charge that includes a determination of guilt. Callahan contends that her guilfy plea to DWAI under VTL 1192.1 was improperly considered by the Board as an OUI conviction because it is a “traffic infraction” under New York state law and not a criminal conviction. Second, Callahan argues that the Board exceeded its authority when it revoked its August 16, 2013 Finding and Order. Callahan asserts that the Board’s inherent authority to reconsider its decisions is ordinarily limited to “compelling situations,” and is further limited here because the Board’s August Finding and Order only reserved a right to reconsider in situations where it received new information or evidence, or if Callahan committed an additional offense.
The Board maintains that Callahan must lose her driver’s license for life because she was twice convicted of OUI and her second offense resulted in a death. According to the Board, this result is mandated by the statute, G.L.c. 90, §24(l)(c)(4). In the Board’s view, a New York DWAI conviction is substantially similar to a Massachusetts OUI because both offenses require proof that alcohol impaired or diminished the operator’s ability to operate safely. Therefore, the DWAI conviction must be considered by the Registrar as Callahan’s first OUI conviction. It makes no difference, according to the Board, if the New York offense is a traffic infraction because the question of whether two offenses are substantially similar turns on the statutoiy elements, not the punishments or licensing consequences violators are subject to. Further, the definition of “conviction” in G.L.c. 90, §24(l)(d) does not expressly require a criminal offense. Finally, the Board argues that it exercised its inherent authority to reconsider its decision when it revoked its August 16, 2013, Finding and Order.
C.Analysis
The Legislature has, since 1939, consistently required the Registrar to revoke for life the license of anyone who kills another person with a motor vehicle during a second OUI. The statute relied upon by the Board for that conclusion is G.L.c. 90, §24(l)(c)(4), as amended through 1998. The analysis begins with the relevant statutory language of that statute. See Leary v. Contributory Retirement Appeal Bd., 421 Mass. 344, 345-46 (1995), quoting Hoffman v. Howmedica, Inc., 373 Mass. 32, 37 (1977) (“[S]tatutory language itself is the principal source of insight into the legislative purpose”). The statute, in pertinent part, reads as follows:
*443 [N]o new license shall be issued or right to operate be reinstated by the registrar to any person convicted of a violation of [OUI] ... at any time after a subsequent conviction of such an offense, whenever committed, in case the registrar determines in the manner aforesaid that the action of such person, in committing the offense of which he was so subsequently convicted, caused an accident resulting in the death of another.
G.L.c. 90, §24(l)(c)(4) [1998 ed.], emphasis added. “The correct reading [of the statute] ... is that the words ‘subsequent conviction of such an offense’ refer to a previous conviction of . . . driving while intoxicated.” Stockman v. Board of Appeal on Motor Vehicle Liability Policies & Bonds, 62 Mass.App.Ct. 159, 161, further appellate review denied, 412 Mass. 1114 (2004). Thus, a lifetime revocation is mandated when there are “two convictions of driving while intoxicated, coupled with a determination by the registrar that the second commission of that offense (’the action of such person, in committing the offense of which he was so subsequently convicted’) caused a fatal accident.” Id., quoting G.L.c. 90, §24( 1)(c)(4).
General Laws chapter 90, §24(l)(d) defines the term “convicted” for purposes of all of the subsections of G.L.c. 90, §24(1), including G.L.c. 90, §24(l)(c)(4). General Laws chapter 90, §24(l)(d) provides, in relevant part, that “a person shall be deemed to have been convicted if he pleaded guilty or nolo contendere or admits to a finding of sufficient facts or was found or adjudged guilty by a court of competent jurisdiction, whether or not he was placed on probation without sentence or under a suspended sentence or the case was placed on file[.]” In Souza, the Supreme Judicial Court “conclude[d] that as used in the statute, ‘convicted’ references only dispositions of criminal charges that include a determination of guilt,” as opposed to situations like an “assignment to an alcohol education, treatment, or rehabilitation program (program assignment); or a continuance without a finding (CWOF)” where guilt is not determined by the court. Souza, 462 Mass. at 228.
It is undisputed that Callahan pleaded guilty to a violation of New York’s DWAI statute before a New York court in satisfaction of her two charges of driving while intoxicated. That plea resulted in a “conviction” for purposes of G.L.c. 90, §24 (which does not confine the definition of “conviction” to conviction of a criminal offense) as well as under New York VTL §1192.1. The New York VTLs refer to “convictions” for DWAI. For example, VTL §155, states that the punishment imposed for a traffic infraction “shall not affect or impair the credibility as a witness or otherwise of any person convicted thereof.” (Emphasis added.) Additionally, VTL §1192.9 provides that “ [a] driver may be convicted of a violation of subdivision one [for DWAI], two or three of this section . . . regardless of whether or not such conviction is based on a plea of guilty.” (Emphasis added.) The record contains a Certificate of Conviction from a New York court which lists the crimes Callahan was charged with and notes that she was “convicted upon a plea of guilty” of DWAI before that court in satisfaction of the criminal charges brought against her. Accordingly, Callahan’s plea of guilty in New York was a conviction.
Callahan argues, however, that the Supreme Judicial Court in Souza added a definitional gloss to the word “convicted” when it stated that “convicted” references disposition of criminal charges. Souza, 462 Mass. at 228. Because New York law makes a conviction under VTL §1192.1 a “traffic infraction,” that is not a crime,[7] Callahan contends that the New York conviction does not meet the Massachusetts statutory definition as described in Souza
There was no disputed issue in Souza about whether the first offense of OUI in that case was criminal in nature. The language in Souza relied upon by Callahan, was merely descriptive of the offense being discussed. The Court did not hold that “conviction” necessarily refers only to a criminal offense in all circumstances. Callahan is taking language in Souza out of context and applying it to her circumstances. That approach is rejected. The proper analysis is to compare the substance of the New York conviction to the Massachusetts law defining OUI. See Bresten v. Bd. of Appeal on Motor Vehicle Liab. Policies & Bonds, 76 Mass.App.Ct. 263, 266-69 (2010).
General Laws chapter 90, §22(c) requires the Registrar to give the same effect to out-of-state motor vehicle convictions as those that occur within the Commonwealth for purposes of suspending, revoking, or limiting the reinstatement of an individual’s right to operate a motor vehicle.[8] In addition, if the laws of Massachusetts do not provide for a motor vehicle offense in precisely the same terms as another state, the Registrar shall nevertheless give effect to the offense when it is “substantially similar” to a Massachusetts driving offense. See Bresten, 76 Mass.App.Ct. at 266-69 (holding Colorado DWAI is substantially similar to Massachusetts OUI). A determination of substantial similarity focuses on “the offenses as they are defined [by the statute] and not as they are punished.” Id. at 269, citing Dowling v. Registrar of Motor Vehicles, 425 Mass. 523 (1997). Accordingly, in order for the Registrar to deny Callahan’s application for reinstatement of her license due to the lifetime revocation, a New York DWAI conviction must be substantially similar to a Massachusetts OUI conviction.
The New York DWAI law provides that “[n]o person shall operate a motor vehicle while the person’s ability to operate such motor vehicle is impaired by the consumption of alcohol.” VTL §1192.1. The legislative purpose behind the statute is “to enhance public safety on the streets.” People v. Conrad, 654 N.Y.S.2d 226, 229 (App.Term 1996). The Court of Appeals of New York observed that “the statute does not speak of *444 degrees of impairment; it simply prohibits the driving of a motor vehicle when the driver’s ‘ability to operate such vehicle is impaired.’ ” People v. Cruz, 48 N.Y.2d 419, 426 (1979), citing VTL §1192.1. Accordingly, that court concluded that “driving a motor vehicle while there is any alcoholic impairment of the driver’s ‘ability to operate such vehicle’ would constitute a violation.” id., emphasis added.
The Massachusetts offense of OUI, G.L.c. 90, §24(l)(a)(l), provides in relevant part that “(w]hoever, upon any way or in any place to which the public has a right of access, or upon any way or in any place to which members of the public have access as invitees or licensees, operates a motor vehicle with a percentage, by weight, of alcohol in their blood of eight one-hundredths or greater, or while under the influence of intoxicating liquor, or marijuana, narcotic drugs, depressants or stimulant substances, all as defined in section one of chapter ninety-four C, or the vapors of glue shall be punished[.]” The legislative purpose behind the statute is “to protect the public from drivers whose judgment, alertness, and ability to respond promptly and effectively to unexpected emergencies are diminished because of the consumption of alcohol.” Commonwealth v. Connolly, 394 Mass. 169, 172-73 (1985). During the prosecution of an OUI violation, the Commonwealth “must prove beyond a reasonable doubt that the defendant’s consumption of alcohol diminished the defendant’s ability to operate a motor vehicle safely. The Commonwealth need not prove that the defendant actually drove in an unsafe or erratic manner, but it must prove a diminished capacity to operate safely.” Id. at 173, emphasis in original.
Despite minor differences in how the two statutory schemes have been constructed,[9] both statutes “require proof that the motor vehicle operator’s ability for clear judgment, physical control, or due care is affected even slightly by alcohol.” See Bresten, 76 Mass.App.Ct. at 268-69. Both schemes also serve the common goal of promoting public safety by reducing the threat posed by drunk drivers. The fact that these schemes have significant differences in the potential punishment for violations and differing licensing consequences is of no moment. See Bresten, 76 Mass.App.Ct. at 269. The Appeals Court rejected that argument when analyzing Colorado’s DWAI statute which is similar to New York’s DWAI statute and substantially similar to the Massachusetts OUI statute.[10] See id. Moreover, at least two superior court cases have previously ruled that both of the statutory schemes at issue address the same conduct. Bellino v. Bd. of Appeal on Motor Vehicle Liability Policies and Bonds, Suffolk Superior Court, CA No. 96B2020-E (Lauriat, J.) (June 8, 1998); Boyce v. Bd. of Appeal on Motor Vehicle Liability Policies and Bonds, Suffolk Superior Court, CA No. 96B147-C (Cratsley, J.) (December 23, 1996).
Alternatively, Callahan argues that the Board exceeded its power when it revoked its August 16, 2013 Finding and Order because it did not have the inherent authorfiy to reopen that decision. It is axiomatic that, in the absence of statutory limitations, administrative agencies “generally retain inherent authority to reconsider their decisions.” Moe v. Sex Offender Registry Bd., 444 Mass. 1009 (2005). Consistent with this authority, agencies may reissue final orders in order to correct errors they have made. See Olmstead v. Dep’t of Telcoms. & Cable, 466 Mass. 582, 584 n.5 (2013). Put simply, “there is no question raised concerning the (B)oard’s right to revise, sua sponte, the substantive rationale for its decision while an appeal from its original decision is pending.” Moe, 444 Mass. at 1010 n.1. Nevertheless, Callahan argues that the power to reconsider must be exercised “sparingly,” and only in limited situations not present here. No such limitation, however, has been imposed on an agency’s power to reconsider its decisions. Callahan cites Stowe v. Bologna in support of her argument, but that case belies her assertions that an administrative agency’s power to reconsider its earlier decisions is limited to several narrow circumstances.
Stowe explicitly recognized agencies possess inherent authority to reopen their cases and did not limit the bases under which an agency may exercise it. Stowe v. Bologna, 32 Mass.App.Ct. 612, 615-16 (1992), rev’d on other grounds, 415 Mass. 20 (1993). The Court did, however, caution agencies that the power to reopen cases “must be sparingly used if administrative [decisions] are to have resolving force on which persons can rely.” Id. The Court provided several examples of situations where reconsideration might be appropriate, noting that “ [administrative decisions, even if adjudicatory in the sense that they determine rights and duties of specifically named persons, frequently have a regulatory component that may warrant reexamination in the light of changes in regulation, purpose, later decisional law, or applicable on-the-ground facts.” Id. This language does not suggest that these are the only applicable situations where the power to reconsider can be exercised. Id.
In the present case, the Board reconsidered its August 2013 decision in light of the legislative mandate to revoke for life the license of a twice convicted driver when that driver kills a person with a motor vehicle during a second OUI. G.L.c. 90, §24(l)(c){4) (“[N]o new license shall be issued or right to operate be reinstated by the registrar to any person convicted of a violation of [a second OUI that] . . . caused an accident resulting in the death of another”). Accordingly, the Court concludes that the Board had the inherent authority to revisit and revoke its August 16, 2013, Finding and Order.
ORDER
For the reasons described above, Callahan’s Motion for Judgment on the Pleadings is DENIED. Judgment *445 on the pleadings shall enter in favor of defendants. This action is DISMISSED.

VTL §1192.2 defines the offense of driving while intoxicated per se. It provides that “[n]o person shall operate a motor vehicle while such person has [fig 1] .08 of one per centum or more by weight of alcohol in the person’s blood as shown by chemical analysis of such person’s blood, breath, urine or saliva, made pursuant to the provisions of section eleven hundred ninety-four of this article.”

VTL §1192.3 defines the offense of driving while intoxicated. It provides that “[n]o person shall operate a motor vehicle while in an intoxicated condition.”

VTL §1192.1 defines the offense of driving while ability impaired. It provides that “[n]o person shall operate a motor vehicle while the person’s ability to operate such motor vehicle is impaired by the consumption of alcohol.”

Section 22(a) provides, in relevant part, that “[t]he registrar may suspend or revoke without a hearing any certificate of registration or any license issued under this chapter whenever the holder thereof has committed a violation of the motor vehicle laws of a nature which would give the registrar reason to believe that continuing operation by such holder is and will be so seriously improper as to constitute an immediate threat to the public safety.”

Callahan filed her complaint in Superior Court on March 31, 2011 while her appeal before the Board was still pending.

In consideration of its affirmation of the lifetime revocation of Callahan’s license, the Board modified and terminated her indefinite driver’s license “immediate threat” suspension under G.L.c. 90, §24(l)(c)(4) because it concluded that the suspension was unnecessary.

Under New York Law, a violation of New York’s DWAI statute “shall be a traffic infraction and shall be punishable by a fine of not less than three hundred dollars nor more than five hundred dollars or by imprisonment in a penitentiary or county jail for not more than fifteen days, or by both such fine and imprisonment.” VTL §1193.1(a). The term “traffic infraction” is defined in VTL §155, which states that “[a] traffic infraction is not a crime and the punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment and shall not affect or impair the credibility as a witness or otherwise of any person convicted thereof.”

 G.L.c. 90, §22(c) provides, in relevant part that:
If the registrar receives official notice . . . that a resident of the commonwealth or any person licensed to operate a motor vehicle ... [in Massachusetts] has been convicted in another state, country or jurisdiction of a motor vehicle violation, the registrar shall give the same effect to said conviction for the purposes of suspension, revocation, limitation or reinstatement of the right to operate a motor vehicle, as if said violation had occurred in the commonwealth.

New York VTL §1192 contains three separate alcohol-related motor vehicle offenses. In contrast, the Massachusetts OUI statute is very broad “catch-all” provision that covers all levels of alcohol-related impairment, including conduct that would fall under the New York DWAI statute.

Just as the New York DWAI statute applies when “there is any alcoholic impairment” of the driver’s ability to operate a motor vehicle, Cruz, 48 N.Y.2d at 426, the Colorado DWAI statute applies when alcohol impairs the driver “to the slightest degree so that the person is less able than the person ordinarily would have been, either mentally or physically, or both mentally and physically, to exercise clear judgment, sufficient physical control, or due care in the safe operation of a vehicle." See Bresten, 76 Mass.App.Ct. at 267, citing Colo.Rev.Stat. §42-4-1301(l)(g), emphasis added.