NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12466

COMMONWEALTH  vs.  ERIC A. RICHARDS.


Suffolk.     May 10, 2018. - September 5, 2018.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.


Motor Vehicle, License to operate, Operating under the
influence.  Statute, Construction.



Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on September 26, 2017.

The case was reported by Lowy, J.


Robert J. Bender, Assistant District Attorney (Timothy
Ferriter, Assistant District Attorney, also present) for the
Commonwealth.
Steven M. Vaillancourt (Andrew Sprow also present) for the
defendant.


KAFKER, J.  In 2010, the defendant's driver's license was

suspended for his refusal to consent to a breathalyzer after his

arrest for operating a motor vehicle while under the influence

of alcohol (OUI).  Because the defendant had three prior

convictions of OUI when he refused the breathalyzer, his license

was subject to a lifetime suspension.  The defendant was later found not guilty of the 2010 OUI charge, and he immediately moved to have his license restored, pursuant to G. L. c. 90, § 24 (1) (f) (1).  His motion was denied.  The defendant made three subsequent motions for restoration of his license in 2011, 2015, and 2017.  A judge in the District Court granted the defendant's 2017 motion for restoration of his license.

The Commonwealth filed a petition for relief with the single justice, pursuant to G. L. c. 211, § 3, arguing that the defendant's license could not be restored under the statute because he was entitled only to an "immediate" hearing on restoration of his license, not one held seven years later, and that allowance of the motion for the reasons stated by the judge would essentially amount to an unconstitutional reformulation of the statute.  The single justice reserved and reported the case to the full court.  Because the plain language of the statute and the legislative history preclude the relief requested, we reverse.

1.  Background.  a.  Statutory scheme.  "In Massachusetts, one's right to operate a motor vehicle is a privilege voluntarily granted. . . .  Continued possession of this privilege is conditioned on obedience to the Legislature's comprehensive regulatory scheme aimed at regulating the motorways and keeping them safe."  Luk v. Commonwealth, 421

Mass. 415, 423 (1995). Toward this end, an individual who drives on a public road is "deemed to have consented to submit to a chemical test or analysis of his breath or blood in the event that he is arrested for operating a motor vehicle while under the influence of intoxicating liquor." G. L. c. 90, § 24 (1) (f) (1). Failing or refusing to take such a test results in license suspension. Id. Such "suspension serves to deter persons from driving while intoxicated; it effectuates the Commonwealth's interest in obtaining reliable and relevant evidence by inducing suspected drunk drivers to take the breath test; and it promotes safety on the highways by summary removal of dangerous drivers." Luk, supra at 425. See Mackey v. Montrym, 443 U.S. 1, 18 (1979) (same).

A comparison of the suspensions imposed on, and remedies available to, drivers who take the breathalyzer test and those who refuse it is informative. An individual who fails the breathalyzer and is subsequently convicted of OUI faces significant suspension consequences. See G. L. c. 90, § 24 (1) (c). Individuals with no prior OUI convictions who are subsequently convicted of OUI face a one-year suspension of their license. G. L. c. 90, § 24 (1) (c) (1). Individuals with one prior OUI conviction face a two-year suspension. G. L. c. 90, § 24 (1) (c) (2). Individuals with two prior OUI convictions face an eight-year suspension. G. L. c. 90,

§ 24 (1) (c) (3).  Individuals with three prior OUI convictions face a ten-year suspension.  G. L. c. 90, § 24 (1) (c) (3 ½).  Individuals with four prior OUI convictions face a lifetime suspension.  G. L. c. 90, § 24 (1) (c) (3 ¾).  When an individual's license is suspended pursuant to § 24 (1) (c), the statute permits the individual to apply for issuance of a limited license on the ground of hardship.  The statute does not, however, permit individuals subject to a lifetime suspension to seek such a hardship license.  See G. L. c. 90, § 24 (1) (c) (3 ¾).

An individual who refuses to take the breathalyzer faces suspension consequences irrespective of whether he or she is subsequently convicted of OUI.  See G. L. c. 90, § 24 (1) (f) (1).  Individuals with no prior OUI convictions who refuse to take the test face a 180-day suspension of their license.  Id.  Individuals with one prior OUI conviction face a three-year suspension.  Id.  Individuals with two prior OUI convictions face a five-year suspension.  Id.  Individuals with three prior OUI convictions face a lifetime suspension.  Id.  Unlike nonlifetime suspensions imposed pursuant to § 24 (1) (c), if an individual's license is suspended for refusing to take the

breathalyzer, the individual is not permitted to apply for a hardship license. See G. L. c. 90, § 24 (1) (f) (1).[1]

The statute does, however, provide an avenue for relief for individuals who refuse to take the test but are subsequently acquitted of OUI. See G. L. c. 90, § 24 (1) (f) (1). The statute provides:

> "the defendant may immediately, upon the entry of a not guilty finding or dismissal of all charges under this section, . . . and in the absence of any other alcohol related charges pending against said defendant, apply for and be immediately granted a hearing before the court which took final action on the charges for the purpose of requesting the restoration of said license. At said hearing, there shall be a rebuttable presumption that said license be restored, unless the commonwealth shall establish, by a fair preponderance of the evidence, that restoration of said license would likely endanger the public safety. In all such instances, the court shall issue written findings of fact with its decision."

Id. On appeal, we must determine whether the statute authorizes a defendant who was acquitted to make belated, additional motions to restore his or her license after his or her immediate motion is denied. For the reasons discussed, we conclude that it does not.

b. Facts. On May 6, 2010, the defendant was arrested for OUI. He had three prior OUI convictions from 1989, 1996, and

---

[1] Where a defendant refuses the breathalyzer and is later convicted, the suspension period triggered by the conviction will "run consecutively and not concurrently" with the suspension triggered by the refusal. See G. L. c. 90, § 24 (1) (f) (1).

2001.  On his arrest, he was informed that if he refused to take the breathalyzer, his license would be suspended, pursuant to § 24 (1) (f) (1).  The defendant chose to refuse the test.  His license was immediately suspended, and he was charged with OUI, fourth offense.

The next day, the registry of motor vehicles suspended the defendant's right to operate a motor vehicle for life, pursuant to § 24 (1) (f) (1).  The defendant did not seek relief under G. L. c. 90, § 24 (1) (g).[2]

On November 8, 2010, a jury found the defendant not guilty of OUI, fourth offense, and the defendant immediately moved to have his driver's license restored.  The judge who had presided over the defendant's trial considered the motion, taking into account the evidence presented at trial as well as the police report and the defendant's criminal and driving history.  On November 16, 2010, the judge issued a ruling denying the motion, concluding that "restoration of the defendant's license would likely endanger public safety."  The defendant filed a notice of

---

[2] Pursuant to G. L. c. 90, § 24 (1) (g), a defendant may seek a hearing before the registrar of motor vehicles within fifteen days of arrest.  This avenue of relief is very limited, however.  At such a hearing, a defendant may contest only the following:  (1) whether the police office had reasonable grounds to believe the defendant was operating a motor vehicle while under the influence of alcohol; (2) whether the defendant was placed under arrest; and (3) whether the defendant refused to submit to a breathalyzer or blood test.  Id.

appeal, but ultimately did not seek relief in the Superior Court.[3]

Nine months later, in August, 2011, the defendant filed a motion before the same judge to "reconsider" the denial of the defendant's motion to restore his driver's license. Following an evidentiary hearing, the judge denied the motion, citing facts about the defendant's criminal and driving history from the judge's original decision. The defendant appealed from the August, 2011, denial, but the appeal was dismissed for lack of prosecution.[4]

Five years after the denial of the defendant's original motion, in November of 2015, the defendant filed a renewed motion to restore his driver's license. He received a hearing on the motion in January, 2016. The 2016 motion judge was not the judge from the defendant's trial and first two motions, as that judge had since retired. The 2016 motion judge heard additional facts and evidence in support of the defendant's motion, but ultimately issued a ruling stating that the motion was denied "at this time."

---

[3] Pursuant to our decision in Commonwealth v. Bauer, 455 Mass. 497, 499-500 (2009), "litigants may obtain review of § 24 (1) (f) (1) license restoration orders entered in the District Court by means of a certiorari action brought in the Superior Court." See G. L. c. 249, § 4.

[4] The stated reason for the dismissal was listed as "[b]rief/appendix not received or status report not filed."

In August, 2017, nearly seven years after the denial of the original motion, the defendant again filed a motion to restore his driver's license. The motion, filed pro se, stated that the defendant was seeking to "restore [his] driver's license or try to get a work license from 5:00 A.M. [to] 5:00 P.M." The defendant provided additional evidence in support of his motion, including "information regarding his long time sobriety, lack of any [subsequent] alcohol related offenses, and employment." The 2017 motion was heard by a judge who had not presided over any of the prior motions or the trial. The Commonwealth objected to the hearing, arguing that G. L. c. 90, § 24, only authorized the defendant to receive an immediate hearing before the trial judge, which he had received in 2010. The 2017 motion judge, however, determined that nothing in the statute or the case law indicated that "an individual is barred by time or requests for reconsideration." She also concluded that the Commonwealth had not made this argument at any of the prior motions, and thus the Commonwealth's objection was "not timely." The 2017 motion judge further determined that the Commonwealth had "failed to establish that reinstatement of [the] defendant's driver's license would endanger public safety," and granted the defendant's motion. The order to restore the defendant's license has been stayed pending the disposition of this case.

2. <u>Discussion</u>. On appeal, the defendant characterizes the 2017 motion judge as ruling on "reconsideration" of the defendant's initial 2010 motion for restoration of his license. The defendant's 2017 motion was not, however, filed as a motion for reconsideration of his 2010 motion. Indeed, the only motion for reconsideration in this case took place in 2011, and was heard by the judge who had presided over the trial and who had considered the initial motion. Accordingly, the motion is more properly considered a new motion for restoration.

Regardless, whether characterized as a renewed motion for restoration or a motion for reconsideration, the 2017 motion was not authorized by G. L. c. 90, § 24, as it did not satisfy the immediacy requirement of the statute. Indeed, the judge's allowance of such a motion essentially created a judicial hardship exception for a defendant who had refused the breathalyzer, where the Legislature expressly chose to prohibit such a remedy.

To determine the legality of the 2017 motion, we look first to the plain meaning of the statutory language in § 24 (1) (<u>f</u>) (1). See <u>Millis Pub. Sch</u>. v. <u>M.P.</u>, 478 Mass. 767, 775 (2018). "The effect given to statutory language should be consistent with its plain language." <u>Retirement Bd. of Stoneham</u> v. <u>Contributory Retirement Appeal Bd</u>., 476 Mass. 130, 135 (2016). "Where the language is clear and unambiguous, it is to

be given its 'ordinary meaning.'" Millis Pub. Sch., supra, quoting Commonwealth v. Mogelinksi, 466 Mass. 627, 633 (2013).

Here, the statute provides that the defendant "may immediately, upon the entry of a not guilty finding or dismissal of all charges under this section," move to request restoration of his or her license. G. L. c. 90, § 24 (1) (f) (1). The text does not state that the defendant may move for, or receive, such hearing again at a later time. Indeed, the statute makes reference to the immediate nature of the proceeding not once, but twice. It provides for a defendant to make a motion for restoration of his or her license "immediately," and a hearing on such motion must be granted "immediately." See id. The statute also requires such motion to be made "before the court which took final action on the charges." Id. Thus, by its plain language, the statutory provision indicates that such motions are to be made and heard immediately after the defendant's acquittal, by the court which presided over the OUI proceedings, based on the defendant's circumstances at the time of the acquittal, not years later.[5]

By requiring an "immediate" motion and an "immediate" hearing before the judge who presided over the OUI proceedings, the plain language also indicates that the Legislature intended

---

[5] Those circumstances would include his prior driving record, and other evidence of alcohol abuse.

for the determination whether restoration "would likely endanger the public safety" to be made on the basis of the facts as they exist at the time of the defendant's acquittal, and in the context of the evidence that was then presented.  See Water Dep't of Fairhaven v. Department of Envtl. Protection, 455 Mass. 740, 744 (2010) (language of statute is primary source of insight into legislative intent).

Nevertheless, the defendant contends that the provision should be read broadly to permit the defendant to make such a motion immediately, but not require it.  The defendant also asserts that additional information, including the defendant's circumstances years after the acquittal, may be appropriately considered.  Indeed, the 2017 motion judge's ruling was based entirely on new information, particularly the defendant's continued sobriety in the intervening years, lack of subsequent offenses, and gainful employment.  This is the very type of information that would be considered by the registrar of motor vehicles (registrar) when deciding whether to issue a hardship license under § 24 (1) (c) for defendants who had taken the breathalyzer test.

Such an expansive reading of § 24 (1) (f) (1) ignores other relevant provisions of the statute and the over-all statutory scheme.  "[I]f reasonably possible, all parts [of a statute must] be construed as consistent with each other" (citation

omitted). <u>Custody of Victoria</u>, 473 Mass. 64, 73 (2015). When the language is read in context, it is clear that the Legislature intended the motion for restoration to be a very limited, time-defined exception to the general rules of suspension for refusal. The preceding phrase in the statute provides that, for defendants whose license has been suspended for refusing the breathalyzer, "[n]o license or right to operate shall be restored <u>under any circumstances</u>" (emphasis added). G. L. c. 90, § 24 (1) (<u>f</u>) (1). Section 24 (1) (<u>f</u>) (1) also explicitly provides that "<u>no restricted or hardship</u> permits shall be issued during the suspension period imposed by [this section]" (emphasis added). These categorical prohibitions apply to all defendants who refused to take a breathalyzer, not just those with multiple OUI convictions.

This type of categorical prohibition also stands in express and stark contrast to the more open-ended hardship exception available under § 24 (1) (<u>c</u>) to defendants who agreed to take the breathalyzer and were convicted. Such defendants may apply for a hardship exception unless they have four prior OUI convictions. See G. L. c. 90, § 24 (1) (<u>c</u>) (3 ¾). For example, defendants with three prior OUI convictions who consent to the breathalyzer and are convicted may apply for a hardship exception under the following conditions:

"such person may, after the expiration of five years from the date of the conviction, apply for and shall be granted a hearing before the registrar for the purpose of requesting the issuance of a new license for employment or education purposes which license shall be effective for an identical twelve hour period every day on the grounds of hardship and a showing by the person that the causes of the present and past violations have been dealt with or brought under control and the registrar may, in his discretion, issue such license under such terms and conditions as he deems appropriate and necessary."

G. L. c. 90, § 24 (1) (c) (3 ½).  Had the defendant in this case consented to the breathalyzer and been convicted, he would have been able to apply to the registrar for a hardship exception on the basis of new information about his sobriety and employment. The statute, however, consistently treats those who refuse to take the breathalyzer differently.  They are not entitled to hardship exceptions, and there is nothing in § 24 (1) (f) (1) to the contrary.[6]

---

[6] There is one exception to the categorical prohibition against hardship licenses for those who refuse to take a breathalyzer.  See 1 Massachusetts Motor Vehicle Offenses § 1.3 (Mass. Cont. Legal Educ. 2d ed. 2009 & Supp. 2016). "Notwithstanding the provisions of . . . [G. L. c. 90, § 24 (1) (f) (1)], [if a court has assigned a defendant to an alcohol education, treatment, or rehabilitation program,] a defendant may immediately upon entering [such] program . . . apply to the registrar for consideration of a limited license for hardship purposes."  G. L. c. 90, § 24D.  This avenue for relief, however, is also very limited and was not available to the defendant in this case.  Eligibility is limited to defendants who have either (1) never before been convicted of OUI or been assigned to a program; or (2) once before been convicted of OUI or assigned to a program, ten or more years before the present offense.  See id.

The relevant inquiry is therefore whether, at the time of the immediate hearing, restoration of the defendant's license "would likely endanger the public safety," not whether "the causes of the present and past violations have been dealt with or brought under control" at a later date, as in the case of a hardship application.  The statutory language, read as a whole, clearly and consistently demonstrates that the Legislature intended the motion for restoration to be a narrow exception to the general rules of suspension for refusal, not the broader, more open-ended remedy available for defendants who have taken the breathalyzer test.  See Souza v. Registrar of Motor Vehicles, 462 Mass. 227, 232 (2012) (use of language in one subsection of § 24 but not another is significant).

This understanding of the statutory language is also consistent with the legislative history.  The current refusal suspension scheme was inserted in 2005, when the Legislature enacted Melanie's Law, which "increas[ed] the periods of license suspension for refusal to submit to a breathalyzer test."  Id. at 231.  See St. 2005, c. 122, § 9.  Prior to the passage of Melanie's Law, refusing to take a breathalyzer could result in, at most, an eighteen-month license suspension.  See 2005 House

Doc. No. 4099.[7]  The Governor, who filed the original legislation, noted that "[t]oo often experienced drunk drivers refuse to cooperate with arresting officers, because they know that their refusal will significantly increase their changes of acquittal."  2005 House Doc. No. 4453.  The changes to the refusal suspension scheme were thus designed to "create an increased incentive to submit to [breathalyzer or field sobriety] tests."  See 2005 House Doc. No. 4099.

Providing defendants with a very narrow avenue for relief on acquittal comports with these public safety concerns.  Unlike suspensions pursuant to § 24 (1) (c), which target dangerous drivers by number of OUI convictions and permit the registrar to issue hardship licenses "when the causes of the present and past violations have been dealt with or brought under control," suspensions pursuant to § 24 (1) (f) (1) target drivers who have not fully cooperated with authorities and otherwise stand to benefit from refusing to comply with the breathalyzer.  See Mackey, 443 U.S. at 19 ("A state plainly has the right to offer incentives for taking a test that provides the most reliable form of evidence of intoxication for use in subsequent

---

[7] Specifically, under the pre-2005 scheme, refusal resulted in a 180-day suspension for drivers with no prior OUI convictions, a twelve-month suspension for drivers with one prior OUI conviction, and an eighteen-month suspension for drivers with two prior OUI convictions.  See 2005 House Doc. No. 4099.

proceedings").  The avenue for relief under § 24 (1) (f) (1) is therefore much narrower and shorter.

If a defendant could continue to make new motions for restoration indefinitely, based on considerations that justify the hardship exception for those who agreed to take the breathalyzer, it would undercut the Legislature's decision to impose harsh suspension consequences that discourage refusal. Had the Legislature intended to allow an exception for hardship, as it does under § 24 (1) (c), it would have so provided.[8] Instead, the Legislature chose to impose harsher consequences for refusal than for conviction in order to increase breathalyzer compliance and "[decrease] the number of drunk drivers who escape the consequences of their actions."  Cf. 2005 House Doc. No. 4453.

3.  Conclusion.  For the reasons discussed, the decision granting the defendant's motion for restoration of his driver's license is reversed.

So ordered.

---

[8] We also note that, even under § 24 (1) (c), defendants subject to a lifetime suspension are not eligible to apply for a hardship license.