SUPERIOR COURT 
 
 DEBRA BALDWIN v. REGISTRAR OF MOTOR VEHICLES and CAMBRIDGE DISTRICT COURT DEPT.

 
 Docket:
 NO. 2284CV00642 C
 
 
 Dates:
 March 20, 2023
 
 
 Present:
 Robert B. Gordon Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON CROSS MOTIONS FOR JUDGMENT ON THE PLEADINGS
 
 

 
Petitioner Debra Baldwin ("Baldwin" or the "Petitioner'') has brought an action for certiorari pursuant to G.L. c. 249, ' 4. By this action, Petitioner seeks review of her license suspension for chemical test refusal in accordance with G.L. c. 90, ' 24(1)(g). Defendant Registry of Motor Vehicles ("RMV" or the "Defendant") opposes Baldwin's action, and the case is now presented to this Court for decision on cross‑motions for judgment on the pleadings.
FACTUAL BACKGROUND
The material facts in this case are straightforward and undisputed in all respects. On June 5, 2021, officers of the Belmont Police Department responded to a report of an unresponsive woman in a broken‑down vehicle stopped on a public way. Arriving on the scene, the officers discovered Baldwin passed out behind the wheel, slumped over and holding car‑keys in her hand. After repeated knocks on the vehicle's window, Baldwin awoke and was observed to have glassy, bloodshot eyes. While then speaking with the police, Baldwin slurred her words, drooled and spat as she talked, repeatedly nodded off, and displayed a general confusion as to her
 
-1-
 
whereabouts. An odor of alcohol pervaded the inside of the automobile, and police officers observed a partially empty bottle of vodka on the vehicle's passenger seat. Baldwin was placed on a stretcher and transported by ambulance to Mt. Auburn Hospital.
Petitioner was thereupon placed under arrest, charged with Operating Under the Influence of Liquor(2d Offense) in violation of G.L. c. 90, ' 24K, and with Consuming Alcohol from an Open Container in a Motor Vehicle in violation of G.L. c. 90, ' 241. Baldwin remained generally disoriented throughout these events.
At approximately 3:20 a.m., Belmont Police Department Officer David Pimentel attempted to read Baldwin her right to submit to a chemical test (a blood test, in common parlance) from the RMV's Statutory Rights and Consent Form (the "Consent Form"). Baldwin, however, was still highly intoxicated and appeared not to understa!)d what was being said to her. Baldwin fell back asleep, and did not reawaken until 5:00 a.m. At that time, Baldwin was released from the hospital and taken to the Belmont Police Station for booking.
Because Baldwin had been advised of the requirement to take a chemical test and failed to submit to one, the police entered a "Refusal" into the Breath Alcohol Testing System ("BATS") machine. The officers then documented the foregoing facts and Baldwin's chemical test refusal in a written police report, on the basis of which the Belmont Police Department issued Baldwin a Notice of License Suspension for a Chemical Test Refusal.

At the ensuing hearing before the RMV, where Petitioner sought the reinstatement of her driver's license, Baldwin did not contest the fact that she had been placed under arrest forOUI or that police had reasonable grounds to believe she had been operating a motor vehicle on a public way while under the influence of intoxicating liquor. Baldwin did, however, dispute that she had refused to submit to the requested chemical test. Baldwin maintained that she had been
 
-2-
 
"completely inebriated" and "so intoxicated that [she] ha[d] no personalrecollection of the events that transpired at the police station." Baldwin further asserted that she was familiar with the implied consent law, understood the enhanced license suspension penalties associated with a refusal to submit to a chemical test, and would have consented to such a test in this instance had she been of coherent mind.[1]
PROCEDURAL BACKGROUND
On July 21, 2021, and following its hearing, the RMV issued a decision denying Baldwin's request to reinstate her driver's license. In her decision, the Hearing Officer specifically found that the police documentation in the record met the statutory requirements for license suspension.[2] That is, the Hearing Officer found that the police had reasonable grounds to believe Baldwin was operating a motor vehicle while under the influence of alcohol, that the police had arrested her, and that Baldwin had thereafter refused to comply with the chemical test requirement of G.L. c. 90, ' 24(1)(f)(l). In this regard, the Hearing Officer expressly rejected Baldwin's argument that voluntary intoxication rendered her incapable of understanding the rights that were read to her, and that she thus cannot be deemed to have "refused" to submit to a chemical test.
 
-------------------------------------
 
[1] In support of this latter point, Baldwin testified that, in connection with a prior QUI arrest, she had consented to taking a breathalyzer test.
 
[2] The statute's operative three‑part test for suspension asks:
"(i) did the police officer have reasonable grounds to believe that [the operator] had been opera ting a motor vehicle while under the influence of intoxicating liquor upon any way or in any place to which members of the public have a right  of access or upon any way to which  members of the public have a right of access as invitees or licensees, (ii) was such person placed under arrest, and
(iii) did such person refuse to submit to such test or analysis."
540 Code Mass. Regs. ' I l.02(5)(b). A hearing officer answering any of the foregoing issues of inquiry in the negative requires the RMV to reinstate the operator's license. (Id.)
 
-3-
 

Baldwin sought judicial review of the RMV's license suspension in District Court; and on September 23, 2021, the Court (Nestor, J.) held a telephonic hearing and thereafter issued a decision affirming the RMV. Baldwin promptly filed an appeal of the District Court's decision with the Supreme Judicial Court (SJC), seeking extraordinary relief under G.L. c. 211, ' 3. A single justice of the SJC (Kaflcer, J.) denied Baldwin's petition, asserting that Baldwin had an adequate alternative remedy available to her through a certiorari petition under G.L. c. 249, ' 4. Baldwin thereupon filed a petition for writ of certiorari in a single justice session of the SJC, which the Court (Lowy, J.) denied with an order transferring the case to this Court.
DISCUSSION
The SJC has described certiorari as a "limited procedure reserved for correction of substantial errors of law apparent on the record created before a judicial or quasi judicial tribunal." Indeck v. Clients' Security Board, 450 Mass. 379, 385 (2008); School Comm. Of Hudson v. Board of Educ., 448 Mass. 565, 575‑76 (2007) (same). The Court "only inquire[s] whether the [agency's] decision was legally tenable and supported by substantial evidence on the record as a whole." Kasperv. Registrar of Motor Vehicles, 82 Mass. App. Ct. 901,902 (2012) (quoting Gloucester v. Civil Serv. Comm'n., 408 Mass. App. Ct. 292,297 (1990)). Review is limited to "rectify only those errors of law which have resulted in manifest injustice to the [petitioner]."
In the case at bar, and for the reasons which follow, the Court discerns neither errors of law by the RMV nor injustice of any kind to Baldwin. The Petitioner's motion, therefore, shall
be DENIED, and the Defendant's cross‑motion ALLOWED.
Petitioner's certiorari challenge to the RMV's denial of her request for license reinstatement presents a single legal issue for review and resolution. Namely, whether a motor
 
-4-
 
vehicle operator who is arrested under circwnstances giving rise to a reasonable belief by the police that she has been operating a motor vehicle while under the influence of intoxicating liquor may be considered to have "refused" a chemical test, within the meaning of the OUI law, when she was too intoxicated to understand the rights explained to her at the time such test was tendered. Petitioner argues that G.L. c. 90, ' 24(1)(f)(l) "requires that the test must be conducted with the defendant's consent[,] and that the police must provide the defendant with an opportunity to either take or refuse the test and must further provide notice of the right to refuse and notice that a refusal will result in a license suspension by the RMV." (Petitioner's Memo., at 8.) Petitioner further maintains that Baldwin's "refusal [was] improper" because, "given her condition and state of mind at the time the police attempted to administer the test[,] she cannot be said to have meaningfully consented or refused." (Id.) See also id. at 8‑9 ("The statute further requires that the defendant be informed of the right to refuse and the fact that any such refusal will result in immediate license suspension. It is implicit in the statute that the person must understand what is being asked of them and must also understand the consequences if they consciously refuse."). The Court does not agree.
The right to operate a motor vehicle is one that is expressly "conditioned  on obedience to the Legislature's comprehensive regulatory scheme aimed at regulating the motorways and keeping them safe." Commonwealth v. Richards, 480 Mass. 413, 414 (2018), quoting Luk v. Commonwealth, 421 Mass. 415, 423 (1995). "Toward this end, an individual who drives on a public road is 'deemed to have consented to submit to a chemical test or analysis of his breath or blood in the event that he is arrested for operating a motor vehicle while under the influence of intoxicating liquor." Richards, 480 Mass. at 414, quoting G.L. c. 90, ' 24(1)(f)(l). Thus, the statute unambiguously provides that "[s]uch test shall be administered at the direction of a police
 
-5-
 

officer ... having reasonable grounds to believe that the person arrested has been operating a motor vehicle [under the influence] ...." G.L. c. 90, ' 24(1)(f)(l) (emphasis added). "Failing or refusing to take such a test results in license suspension." Richards, 480 Mass. at 414 (emphasis added).
The foregoing makes clear that the RMV Hearing Examiner committed no error in her conclusion that Baldwin had, indeed, refused or failed to provide consent to a chemical test. Chapter 90, ' 24(1)(f)(l) presumes consent as a matter of law, see ante; and where, as here, an individual is arrested by police officers having reasonable grounds to believe that such individual is operating a motor vehicle under the influence of alcohol, the statute (by its plain terms) mandates the administration of a chemical test to the arrestee once he is informed of the consequences of refusing. What this means is that that an arrested individual may withhold actual consent to the chemical test tendered to him, in the sense that the police have no superior right (absent a warrant or court order) to force a physical invasion of his body in this circumstance. See Commonwealth v. Davidson, 27 Mass. App. Ct. 846,849 (1989) ("The purpose of the provisions regarding actual consent (as opposed to the implied consent established by the first sentence of' 24[1]["1) seems to have been to avoid forced testing‑i.e., testing by means of physical compulsion ....")(emphasis in original). But the power to withhold actual consent does not confer upon an arrestee a "right" to thwart the administration of a chemical test without consequence. The statute is clearly to the contraryy. The Jaw requires police to administer a chemical test when faced with an arrestee reasonably suspected to have operated a motor vehicle under the influence; and an individual who refuses or, in the language of Richards, "fails" to allow for such a test thereby subjects himself or herself to automatic license revocation.
 
-6-
 
Petitioner contends that her extreme level of voluntary intoxication in this case prevented her from fully understanding the Consent Form read to her, such that her refusal to allow for the administration of a chemical test cannot be considered "knowing" or "informed" when "measured by the traditional indicia of waiver ...." (Petitioner's Memo., at 7‑9.) Petitioner misreads the statute and misapprehends the purpose of the Consent Form. Neither the law nor the RMV's implementing form require an arrested person to be advised of a right to withhold consent in the manner of a Miranda warning.[3] And these authorities likewise require no level of competent comprehension by an arrestee before a refusal can be considered valid. As the SJC's decision in Richards makes clear, any "failure" to allow the compulsory chemical test mandated by the statute to go forward, whatever the reason for such failure may be, is treated as a refusal under' 24(1)(f)(l ).[4]
This reading of the statute is, of course, fully in accord with the public safety purposes underlying it. The mandatory license suspension resulting from a chemical test refusal "serves to deter persons from driving while intoxicated; it effectuates the Commonwealth's interest in obtaining reliable evidence by inducing suspected drunk drivers to take the breath test; and it
 
-------------------------------------
 

[3] Indeed, and unlike the Fifth Amendment right enshrined in Miranda, arrested persons are specifically told that refusal to give consent cany the adverse remedial consequence of license revocation.
 
[4] Petitioner's contrary reliance on the Appeals Court's decisions in Commonwealth v. Carson, 72 Mass. App. Ct. 368 (2008), and Commonwealth v. Davidson. 27 Mass. App. Ct. 846 (1989), is misplaced. These cases address the quality of consent required to permit blood tests to be admitted into evidence at a criminal trial. They have no bearing whatsoever on the automatic licensing consequences which follow from a refusal or failure to furnish consent. Indeed, Davidson appears to make this point directly:
"Implied consent statutes typically forbid testing where the suspect refuses or withholds his consent at the scene. So far as we have found, no State court has interpreted its statute to require consent or waiver in accordance with the 'voluntary, knowing and intelligent' standard applicable to waiver of important constitutional rights."
Davidson, 27 Mass. App. Ct. at 849.
 
-7-
 
promotes safety on the highways by summary removal of dangerous drivers." Luk v. Commonwealth, 421 Mass. 415, 425 (I 995). It would pervert common sense, and frustrate the unmistakable objectives of the OUI statute, to allow extreme intoxication on the part of a driver ‑ the worst version of the very thing sought to be eradicated by the law ‑ to at once deny the police access to proof of this offense and at the same time shield the offender from the mandated consequences of such denial.[5]
For this reason, the RMV's suspension of Baldwin's driver's license for chemical test refusal is both supported by substantial evidence and in accordance with the governing law. The District Court's affirmance of that order was proper, and will not be disturbed on certiorari.
CONCLUSION AND ORDER
In accordance with the foregoing, the Petitioner's Motion for Judgment on the Pleadings is DENIED, and the Defendants' Cross‑Motion for Judgment on the Pleadings is ALLOWED.
SO ORDERED.
 
 
-------------------------------------
 
[5] A child who commits parricide has no colorable plea for leniency on the gronnd that he is an orphan.
 
-8-
 
xxz